*In re* APPLICATION OF MICHIGAN CONSOLIDATED
GAS COMPANY

Docket Nos. 312296 and 312305. Submitted January 9, 2014, at Lansing. Decided February 6, 2014, at 9:00 a.m.

In Docket No. 312296, Michigan Consolidated Gas Company (Mich-Con) filed an application for a gas cost recovery reconciliation proceeding for the 12 months ending March 31, 2010, in the Public Service Commission (PSC) (Case No. U-15701-R). The aspect of the case at issue on appeal is the pricing method for the exchange gas that MichCon purchases from the MichCon Gathering Company (MGAT), which collects natural gas into a gathering facility before delivering it to MichCon at a meter station in Kalkaska County. "Exchange gas" refers to the imbalance between the volume of gas measured at the gathering facility and the volume of gas delivered to MichCon at the meter station. MichCon had historically priced its exchange gas purchases at the jurisdictional rate, which is the average cost of gas over the entire cost-recovery period. However, in a September 28, 2010 order in Case No. U-16146 (the rate-case companion of the reconciliation case underlying the appeal in Docket No. 312305), the PSC announced that exchange gas purchases would thereafter be priced at Mich-Con's city-gate index rates, meaning the published monthly index prices for gas purchases at MichCon's delivery point. The PSC specified that this change would operate prospectively. Testimony indicated that MichCon had not reported the MGAT imbalances as a purchase for the period at issue because MichCon was awaiting the PSC's order in Case No. U-15451-R, which was expected to include an approved pricing methodology for exchange gas. The PSC issued that order on October 14, 2010, and there reiterated its determination in the September 28, 2010 order in this case that exchange gas would thereafter be priced at city-gate index rates. The proposal for decision in the case at issue concluded that appellant had not purchased the exchange gas within the meaning of the PSC's orders in Case Nos. U-16146 and U-15451-R, but had instead deferred the purchase of those volumes pending the PSC's decisions in those cases, and thus that an adjustment to the prices included in the reconciliation of those volumes was appropriate. Accordingly, the PSC issued an order in Case No. U-15701-R

repricing appellant's purchases of exchange gas incurred between April 1, 2009, and March 31, 2010, at city-gate index prices, thus reducing appellant's gas supply cost recovery by $3.3 million. The PSC denied MichCon's motion for rehearing.

In Docket No. 312305, MichCon filed an application for a gas cost recovery reconciliation proceeding for the 12 months ending March 31, 2011 (Case No. U-16146-R). Testimony indicated that the exchange gas purchases for this period that took place before the PSC's September 28, 2010 order changing the pricing methodology were recorded at the jurisdictional rate, and that purchases made after this date were priced at the city-gate index rate. However, the PSC issued an order pricing all of appellant's purchases of exchange gas for the reconciliation period at city-gate index prices, resulting in a reduction of appellant's gas supply cost recovery by $1,142,595.

MichCon appealed in both cases, and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. The PSC did not exceed its authority by using the reconciliation cases to adjust the pricing of the exchange gas purchases. MCL 460.6h provides for establishing, approving, and implementing gas cost recovery (GCR) factors, then provides for reviewing such implementation in progress to determine whether adjustments are in order. MCL 460.6h(12) directs the PSC to reconcile the revenues recorded pursuant to the gas cost recovery factor and the allowance for cost of gas included in the base rates established in the latest commission order for the gas utility with the amounts actually expensed and included in the cost of gas sold, and to do so on the basis of the reasonableness and prudence of expenses. The provision for reconciliation proceedings thus calls for refinement or enforcement of what was decided in the attendant plan proceedings. Accordingly, the command of MCL 460.6h(3) to minimize costs applied to both rate cases and reconciliation proceedings. To the extent that the adjustments the PSC made to the pricing of exchange gas in the reconciliation proceedings could be characterized as retroactive ratemaking, it was authorized by MCL 460.6h.

2. The PSC acted unreasonably or capriciously by setting forth a prospective-only requirement changing the pricing of exchange gas to the city-gate index method, then applying that change retroactively. In Case No. U-15701-R, although there was testimony indicating that MichCon intended to defer completing its purchase of delivered exchange gas pending an expected decision from the PSC, uncontroverted evidence indicated that appellant in fact completed the purchases of exchange gas at issue before the

PSC announced that pricing change. In Case No. U-16146-R, the PSC justified its determination to impose city-gate index pricing for the whole period covered in that reconciliation on the grounds that the September 28, 2010 order that called for city-gate index pricing for purchases occurring thereafter also stated that it applied to deliveries of gas that predated that order, but whose costs were not yet approved by the PSC. However, it was undisputed that the purchases in question occurred before September 28, 2010. Accordingly, the orders were vacated insofar as they retroactively repriced MichCon's purchases of exchange gas completed before September 28, 2010, and the case was remanded to the PSC for further proceedings consistent with this opinion.

Orders vacated with respect to repricing and remanded for further proceedings; cases affirmed in all other respects.

*Bruce R. Maters, Richard P. Middleton,* and *Fahey Schultz Burzych Rhodes PLC* (by *William K. Fahey and Stephen J. Rhodes*) for the Michigan Consolidated Gas Company.

*Bill Schuette,* Attorney General, *Aaron D. Lindstrom,* Solicitor General, *Richard A. Bandstra,* Chief Legal Counsel, and *Steven D. Hughey, Michael J. Orris,* and *Heather M. Durian,* Assistant Attorneys General, for the Michigan Public Service Commission.

*Bill Schuette,* Attorney General, *Aaron D. Lindstrom,* Solicitor General, *Richard A. Bandstra,* Chief Legal Counsel, and *Michael E. Moody,* Assistant Attorney General, for the Attorney General.

*Public Law Resource Center PLLC* (by *Don L. Keskey*) for the Michigan Community Action Agency Association.

Before: WHITBECK, C.J., and FITZGERALD and O'CONNELL, JJ.

PER CURIAM. In these consolidated appeals, appellant Michigan Consolidated Gas Company appeals as of

right orders of the Michigan Public Service Commission (PSC) insofar as they repriced appellant's purchases of exchange gas for the period of April 1, 2009, through March 31, 2010, and April 1, 2010, through September 27, 2010, in accordance with a rate adopted prospectively for such purchases on September 28, 2010. We vacate the orders below in those regards and remand this case to the PSC for further proceedings. There being no other issues on appeal, we affirm the orders below in all other regards.

## I. FACTS

These appeals arise from gas cost reconciliation proceedings conducted pursuant to MCL 460.6h(12), which provides for periodic contested cases in order to "reconcile the revenues recorded pursuant to the gas cost recovery factor and the allowance for cost of gas included in the base rates established in the latest commission order for the gas utility with the amounts actually expensed and included in the cost of gas sold" and for doing so on the basis of the "reasonableness and prudence of expenses for which customers were charged if the issue could not have been considered adequately at a previously conducted gas supply and cost review."

At issue is appellant's purchases of exchange gas from the MichCon Gathering Company (MGAT), which gathers natural gas in the northern portion of the lower peninsula into its Antrim Expansion Project (AEP), then delivers the gas to appellant at a meter station in Kalkaska County. According to the parties, a perfect balance never exists between the gas delivered to the AEP and that delivered to appellant, and the difference between those two measured volumes of gas is referred to as "exchange gas."

Appellant has historically priced its exchange gas purchases at the "jurisdictional rate," meaning the average cost of gas over the entire cost-recovery period. However, in a September 28, 2010 order in Case No. U-16146, which is the companion of the reconciliation cases on appeal in Docket No. 312305, the PSC announced that exchange gas purchases would thereafter be priced at appellant's "city-gate index" rates, meaning the published monthly index prices for gas purchases at appellant's delivery point. The PSC stated that this change would operate prospectively, and elaborated as follows:

> Mich Con shall prospectively price its MGAT purchases using its monthly city-gate index price rather than the jurisdictional rate. By "prospective," the Commission means all purchases occurring after the Commission issues its final order in this case. In the case where the gas was delivered before the Commission issues this order, but the costs are not approved until after the order, then Mich Con shall book the costs at the city-gate monthly index price.

In an order issued a few weeks later, in a case not part of the present appeal, the PSC again addressed the issue of prospective application of the city-gate index pricing for exchange gas, stating:

> [T]he Staff . . . recommended that the city-gate index price be applied as a ceiling on a going forward basis. The Staff believed it unfair to Mich Con to apply the city-gate index in this case as the company had not received notice that the Commission might apply another benchmark for the MGAT purchases other than the jurisdictional rate. The ALJ agreed that the city-gate rate is the more appropriate benchmark for MGAT purchase[s], but agreed with the Staff that it should be applied to MGAT purchases prospectively only. The ALJ did, however, recommend that the city-gate index rate apply to MGAT supply received but not booked with an associated cost in the forthcoming [gas cost recovery (GCR)] periods. The ALJ did find evidence that

Mich Con was aware of the potential risk of disallowance for MGAT pricing. [*In re Application of Mich Con Gas Co*, order of the Public Service Commission, entered October 14, 2010 (Case No. U-15451-R), p 9.]

Accordingly, the PSC did not use the new pricing for the latter case, but decreed that "Michigan Consolidated Gas Company shall apply the city-gate index price to all future Mich Con Gathering Company supply purchases." *Id.* at 12.

### A. CASE NO. U-15701-R: EXCHANGE GAS PRICING FOR APRIL 2009 TO MARCH 2010

A witness testifying on behalf of the Attorney General introduced an exhibit detailing events related to MGAT's deliveries of gas to appellant, asserting that although appellant's gas cost recovery plan for the 2009-2010 GCR period made no mention of MGAT, MGAT purchases did take place during that period. The witness testified that the purchase price recorded for gas received by appellant from MGAT during the 2009-2010 reconciliation period was the jurisdictional rate for that year, and that in each month of that period appellant recorded its receipt of the gas provided by MGAT as exchange gas received. Asked about changing the pricing method for this period from the jurisdictional rate to the city-gate index rate, the witness estimated that such a change would result in a reduction of appellant's recoverable costs for exchange gas purchases of $3.3 million.

A gas supply analyst for appellant answered in the negative when asked whether appellant did purchase imbalance volumes from MGAT from April 2009 through March 2010, and elaborated, "MGAT imbalances were recorded as exchange gas and appropriately included in the cost of gas as done for all exchange gas

accounting" and that "the volumes have not been booked as a purchase at this time." The witness explained that appellant was awaiting the PSC's order in Case No. U-15451-R, because that order was expected to include an approved pricing methodology for exchange gas, and appellant intended to adhere to the PSC's determination in that regard. The PSC issued that order on October 14, 2010, and there reiterated its determination in the September 28, 2010 order in this case that exchange gas would thereafter be priced at city-gate index rates. Similarly, another of appellant's supply analysts testified that "MGAT imbalance volumes for the April 2009-March 2010 period have not been purchased at this time." However, a third witness for appellant, in rebuttal testimony, stated that appellant's "treatment of the MGAT costs included in this reconciliation is consistent with the Commission's order[s]," having "priced its MGAT volumes at the Jurisdictional rate" on the ground that "[t]his purchase was made prior to the Commission's orders and would not have been a 'prospective' purchase at the time of these orders."

The administrative law judge, in the proposal for decision (PFD), opined that appellant "did not 'purchase' the volumes within the meaning of the Commission's orders in Case Nos. U-16146 and U-15451-R, but instead deferred the 'purchase' of those volumes pending the Commission's decisions in those cases," and thus that "an adjustment to the prices included in the reconciliation for those volumes is appropriate." The PFD recommended that the PSC adopt the proposal of the attorney general's witness to disallow $3.3 million in gas recovery costs.

On December 6, 2011, the PSC issued an order in Case No. U-15701-R, repricing appellant's purchases of

exchange gas incurred between April 1, 2009, and March 31, 2010, at city-gate index prices, thus reducing appellant's gas supply cost recovery by $3.3 million. The PSC denied appellant's motion for rehearing in an order issued on August 14, 2012.

### B. CASE NO. U-16146-R: EXCHANGE GAS PRICING FOR APRIL 2010 TO MARCH 2011

Appellant's supply analyst testified that, between April 2010 and March 2011, the volume of gas measured at the outlet of the AEP was greater than the net inputs to the AEP; that the gains across were delivered to appellant, producing a surplus for the latter; and that appellant agreed to purchase the imbalance volumes from MGAT at the time they were delivered through the meter. The witness added that those purchases took place before September 28, 2010, and so were "properly" recorded at the jurisdictional rate. Another witness for appellant confirmed that "purchases made through September 27, 2010 were priced at the Jurisdictional Rate for the period during which they were delivered," but that "[a]ll purchases made after this date were priced at MichCon's City Gate Index in accordance with the Commission's Orders."

However, the attorney general's witness recommended that, to be consistent with its treatment of prices for 2009-2010, the PSC adopt city-gate index pricing for the entire 2010-2011 period, and thus reduce appellant's recovery of gas costs for that period by $1,140,000.

On August 14, 2012, the same date on which the PSC denied rehearing in Case No. U-15701-R, the PSC issued an order pricing all of appellant's purchases of exchange gas incurred between April 1, 2010, and March 31, 2011, at city-gate index prices, declining to

distinguish purchases made before September 28, 2010, from those made afterward. The result was a reduction of appellant's gas supply cost recovery by $1,142,595. The PSC took the opportunity to elaborate on its new pricing policy, stating:

> [T]he jurisdictional rate applies to gas where, by contract, a fixed quantity of gas must be delivered to a certain receipt point on a certain date. None of these attributes applies to MGAT deliveries; thus, it appears that the jurisdictional rate is an unreasonable proxy for pricing MGAT imbalances. This is especially true when the company has an obligation to minimize the cost of gas as provided in Section 3 of Act 304.[1] Nevertheless, the Commission agreed with the Staff's position in Case No. U-15451-R, that it would be unfair to re-price MGAT supply in that reconciliation because Mich Con was not on notice that the Commission would use the city-gate index as a proxy for MGAT pricing. At this point, however, Mich Con has been aware for almost two years that MGAT purchases are more appropriately priced at city-gate index.

### C. APPELLATE PROCEEDINGS

In these consolidated appeals, appellant argues that the PSC erred by applying the city-gate index prices to any purchases of exchange gas incurred at the jurisdictional rate before September 28, 2010, the date from which the city-gate rates were to replace the jurisdictional rates. Appellant raises no challenges concerning witness credibility, the accuracy of any of the mathematics involved, or the overall propriety of using city-gate index pricing for exchange gas purchases. Instead, appellant raises a challenge on procedural grounds concerning the propriety of imposing such an

---

[1] "Act 304" refers to 1982 PA 304, now MCL 460.6h through m, which, among other things, authorized the use of gas cost recovery clauses or factors.

adjustment in a rate reconciliation case, and whether the change constituted impermissible retroactive rate-making. Appellant also challenges what it characterizes as the PSC's retroactive application of city-gate index rates in these cases on the substantive ground that the PSC failed to adhere to its determination to apply the new pricing methodology only prospectively. Appellees argue that the PSC had a reasonable basis for concluding that the purchases in question took place after the effective date of the orders establishing city-gate index pricing, and also acted reasonably in using the reconciliation process to enforce that requirement.

## II. STANDARDS OF REVIEW

All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. MCL 462.25. See also *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999).

A reviewing court gives due deference to the PSC's administrative expertise, and is not to substitute its judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). However, whether the PSC exceeded the scope of its authority is a question of law calling for review de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

Likewise, issues of statutory interpretation call for review de novo. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008). A reviewing court should give an administrative agency's interpretation of statutes that it is obligated to execute respectful consideration, but not deference. *Id*. at 103, 108.

### III. REPRICING IN A RECONCILIATION CASE

Appellant argues that the PSC exceeded its authority by using the reconciliation cases below to adjust the pricing of its exchange gas purchases. We disagree.

This issue concerns the interplay between rate cases and reconciliation cases. MCL 460.6h sets forth the process through which a gas utility may include gas cost recovery factors in calculating rates charged to customers, and through which the PSC may approve such factors initially, or adjust them to reconcile them with actual expenses incurred. Subsections (2) through (11) govern contested GCR plan cases to establish and implement such factors. Specifically, subsection (3) authorizes a gas utility to evaluate the "reasonableness and prudence of its decisions to obtain gas" and to explain its "legal and regulatory actions . . . to minimize the cost of gas purchased by the utility."

Subsection (12) provides for contested gas cost reconciliation proceedings to review GCR plans "not later than 3 months after the end of the 12-month period covered by a . . . plan," to "reconcile the revenues recorded" in connection with the GCR factors "and the allowance for cost of gas included in the base rates established in the latest commission order for the gas utility with the amounts actually expensed and included in the cost of gas sold," and authorizes the PSC to "consider any issue regarding the reasonableness and

prudence of expenses for which customers were charged if the issue could not have been considered adequately at a previously conducted gas supply and cost review."

Subsection (13) requires the PSC, in orders resulting from gas cost reconciliation cases, to "require a gas utility to refund to customers or credit to customers' bills any net amount determined to have been recovered over the period covered in excess of the amounts determined to have been actually expensed by the utility for gas sold, and to have been incurred through reasonable and prudent actions . . . ."

Subsection (14) in turn requires the PSC to "authorize a gas utility to recover from customers any net amount by which the amount determined to have been recovered over the period covered was less than the amount determined to have been actually expensed by the utility for gas sold, and to have been incurred through reasonable and prudent actions . . . ."

Appellant argues that the PSC erred by demanding a change in pricing exchange gas in reconciliation proceedings, on the grounds that the requirement in MCL 460.6h for minimizing costs occurs in the course of providing for GCR plan cases, not reconciliation ones, and that by imposing such adjustments in reconciliation proceedings the PSC has run afoul of the general rule against retroactive ratemaking. The PSC concedes that in the reconciliation cases below it did not determine appellant's MGAT purchases to be unreasonable or imprudent, but asserts that it retained authority beyond that initial approval to insist on pricing for those purchases consistent with its earlier orders.

The PSC possesses only that authority granted to it by the Legislature. *Attorney General v Pub Serv Comm*, 231 Mich App 76, 78; 585 NW2d 310 (1998). Among the constraints on administrative action is that decisions

may not be "[m]ade upon unlawful procedure resulting in material prejudice to a party." MCL 24.306(1)(c). Words and phrases in the PSC's enabling statutes must be read narrowly and in the context of the entire statutory scheme. See *Consumers Power Co v Pub Serv Comm*, 460 Mich 148, 155-159; 596 NW2d 126 (1999). However, "[t]o the extent possible, each provision of a statute should be given effect, and each should be read to harmonize with all others." *Mich Basic Prop Ins Ass'n v Ware*, 230 Mich App 44, 49; 583 NW2d 240 (1998).

MCL 460.6h first sets forth provisions for establishing, approving, and implementing GCR factors, then sets forth provisions for reviewing such implementation in progress to determine whether adjustments are in order. Again, MCL 460.6h(12) directs the PSC to "reconcile the revenues recorded pursuant to the gas cost recovery factor and the allowance for cost of gas included in the base rates established in the latest commission order for the gas utility with the amounts actually expensed and included in the cost of gas sold," and to do so on the basis of the "reasonableness and prudence of expenses[.]" The provision for reconciliation proceedings thus calls for refinement or enforcement of what was decided in the attendant plan proceedings. Accordingly, we construe the command of MCL 460.6h(3) to minimize costs as bearing on both kinds of proceeding.

In Case No. U-15701-R, its GCR-plan companion, Case No. U-15701, included no provision for exchange gas at all, and so when the reality of such purchases from MGAT came into being, reconciliation proceedings afforded the only opportunity to consider the question whether appellant was recording those purchases at the correct price. That enforcement action thus falls

squarely under the authority prescribed in subsection (12) for the PSC to "reconcile the revenues" on the basis of "reasonableness and prudence of expenses for which customers were charged *if the issue could not have been considered adequately at a previously conducted gas supply and cost review*" (emphasis added).

In Case No. U-16146-R, its rate-proceeding companion, Case No. U-16146, expressly envisioned MGAT purchases, and prospectively called for city-gate index pricing of exchange gas. In light of the discussion and resolution of questions concerning how to price exchange gas through the development of, and decision in, the GCR plan case that in turn engendered this reconciliation case, it would be elevating form over function to suggest that the PSC was powerless to remedy a perceived error in the matter in the reconciliation proceeding.

Nor does appellant's characterization of the result as retroactive ratemaking have merit. Retroactive ratemaking "involves a change either upward or downward in the rates charged by a utility for its service under a lawful order." *Detroit Edison Co v Pub Serv Comm*, 221 Mich App 370, 376; 562 NW2d 224 (1997). In the absence of specific statutory authorization, retroactive ratemaking in utility cases is prohibited. *Mich Bell Tel Co v Pub Serv Comm*, 315 Mich 533, 547, 554-555; 24 NW2d 200 (1946). However, "the PSC has discretion to determine what charges and expenses to allow as costs of operation. What reasonable accounting method to employ is a legislative decision to be made by the PSC." *Detroit Edison Co*, 221 Mich App at 375 (citation omitted).

In this case, if the adjustments the PSC made to the pricing of exchange gas in the reconciliation proceedings below may fairly be characterized as retroactive

ratemaking, such retroactive ratemaking is statutorily authorized. See *Mich Bell Tel Co*, 315 Mich at 547, 554-555. As previously discussed, MCL 460.6h sets forth reconciliation proceedings as a means of refining or enforcing the provisions of related GCR plan cases during or immediately following implementation of those plans. As appellees consistently and reasonably note, the statutory provisions for reconciliation cases envision some after-the-fact adjustments in approved costs by their very nature.

For these reasons, we reject appellant's procedural challenges.

### IV. PROSPECTIVE APPLICATION

Appellant argues that the PSC set forth a new pricing methodology with strictly prospective application, but then engaged in creative interpretation of the evidence and of its orders to apply that methodology retroactively. We find merit to this argument.

In Case No. U-15701-R, the PSC justified applying the city-gate index pricing by pointing out that two of appellant's witnesses testified that exchange gas from MGAT had been received and recorded, but that as a matter of bookkeeping, actual completion of the purchases would be delayed until the PSC had issued orders resolving recent controversy over the best method of pricing. The PSC apparently credited those two witnesses entirely, and discredited as an unexplained contradiction the later testimony from a third witness that the gas in question had actually been purchased before the awaited orders were issued. The PSC apparently found it expedient to identify an evidentiary conflict and resolve it in favor of the witnesses who spoke of deferred purchasing. But, as appellant

points out, its witnesses were speaking at different times about different practices.

The witnesses who spoke of appellant's deferring purchases of exchange gas testified on June 29, 2010. The rebuttal witness who spoke of appellant's having in fact completed all such purchases initiated before the PSC's September 28, 2010 order announcing a prospective new pricing scheme by that date testified on March 15, 2011. The attorney general's witness confirmed that a change had taken place, offering the following summary:

> [The administrative law judge] issued his PFD in Case No. U-15451-R on July 1, 2010, just two days after MichCon had filed its U-15701-R testimony declaring its intention to price its MGAT purchases in accord with the Commission's U-15451-R order when it appeared. But MichCon did not wait for the Commission's order. Instead, on August 4, 2010, MichCon purchased the MGAT deliveries made during the U-15701-R GCR period (April 2009 through March 2010) at a price equal to the Jurisdictional Rate for that U-15701-R period. On the same date, MichCon also purchased the gas delivered by MGAT in April, May, and June 2010. The price for the latter purchase was $6.95 per Mcf, which was MichCon's estimate (as of the purchase date) of its Jurisdictional Rate for the 2010-2011 GCR period, which is the period being addressed in the present proceeding.
>
> The following day—August 5, 2010—[the] ALJ . . . issued her PFD in Case No. U-16146, MichCon's GCR plan proceeding for the 2010-2011 GCR period being reconciled here. Four days later, on August 9, MichCon purchased MGAT's July deliveries; and then MichCon purchased MGAT's August 2010 deliveries on September 24. Both of these MGAT purchases were priced at MichCon's then-current estimate of what its Jurisdictional Rate would be for the entire 2010-2011 GCR period, ending March 31, 2011. That estimate remained at $6.95 per Mcf for the

purchase of MGAT's July and August deliveries, the same as the estimate used to price the deliveries for April, May, and June 2010.

Also on August 9, 2010, the same day it purchased MGAT's July deliveries, MichCon amended its Base Contract with MGAT for the purchase of the MGAT deliveries. The amendment fixed the pricing of the MGAT purchases at MichCon's Jurisdictional Rate, contrary [to] the recommendations by both ALJs in their PFDs addressing the pricing issue. The amendment also made this pricing change retroactive to include all transactions executed after April 1, 2009.

This summary comports with an exhibit submitted by the Attorney General detailing the purchasing activity between appellant and MGAT at the relevant times. This undisputed chronology suggests that appellant originally intended to defer the completion of its exchange of gas purchases until the PSC issued orders indicating whether there would be a change to city-gate index pricing, but then actually *accelerated* the process in order to complete the transactions at issue before the anticipated change to retain the perceived advantage of the earlier pricing methodology.

Appellant characterizes its timing in incurring the exchange gas purchases as a management decision outside the PSC's regulatory purview. Appellant likens its actions in this regard to a taxpayer who "might complete a contemplated transaction before year-end due to a potential future change in the tax law." We see nothing pernicious about a utility's accelerating certain business activities in order to maximize the advantage to be had from doing so before an anticipated change in the regulatory environment. We must conclude that the record does not support the PSC's finding, because the earlier testimony reflected a mere plan to defer actual purchases of exchange gas, which plan ultimately

yielded to a change in appellant's actual business operations. It is undisputed that appellant actually completed the purchases before the orders affecting pricing methodology were issued.

In its order in Case No. U-16146-R, the PSC noted the Attorney General's argument below that appellant changed its relationship with MGAT in order to "frustrate" the pending recommendations for a change in pricing methodology. The PSC justified its determination to impose city-gate index pricing for the whole period covered in that reconciliation on the grounds that the September 28, 2010 order that called for city-gate index pricing for "all purchases occurring after the Commission issues its final order in this case" also stated that it applied to deliveries of gas that predated that order, but whose costs were not yet approved by that order. According to the PSC, appellant "has been aware for almost two years that MGAT purchases are more appropriately priced at city-gate index." On appeal, the PSC adopts the following reasoning set forth by the ALJ in the proposal for decision:

> Under the express terms of that [9/28/10] Order [in Case No. U-16146], the MGAT purchases between April 1 and September 27, 2010, at issue in this case occurred before September 28, 2010. However, those purchases will not be approved until the Order in this case is entered. Therefore, all MGAT purchases during the GCR Year, irrespective of when they occurred, must be priced at the city-gate index.

The PSC thus concedes that the purchases of the gas at issue had indeed "occurred" before the effective date of the order calling for a change in pricing methodology, then relies on the pendency of final cost approval for purposes of imposing the new pricing on those purchases that had otherwise already occurred. Appellant asserts that dating otherwise completed purchases to a

later approval date does not comport with the announced policy of prospective application. We agree that application of the policy to purchases that appellant made before September 28, 2010, did not comply with the PSC's statement that it would only prospectively apply the new policy.

For these reasons, we conclude that the PSC acted unreasonably, or capriciously, in setting forth a prospective-only requirement changing the pricing of exchange gas to the city-gate index method, then applying that change retroactively. In Case No. U-15701-R it achieved this by overreliance on testimony indicating that appellant intended to defer completing its purchase of delivered exchange gas pending an expected decision from the PSC, when uncontroverted testimony and exhibits indicated that appellant in fact completed the purchases of exchange gas at issue before the PSC announced that pricing change. In Case No. U-16146-R, the PSC enforced its ostensibly prospective-only rule retroactively by indulging the fiction that otherwise completed purchases of exchange gas were in fact not completed until approved through completion of the PSC's review process, despite conceding that the purchases had occurred before September 28, 2010.

Accordingly, we vacate the orders below insofar as they retroactively repriced appellant's purchases of exchange gas completed before September 28, 2010, and remand this case to the PSC for further proceedings consistent with this opinion.

Reversed in part and remanded. We do not retain jurisdiction.

WHITBECK, C.J., and FITZGERALD and O'CONNELL, JJ., concurred.