# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF HOLLAND,

        Plaintiff-Appellee,

v

CONSUMERS ENERGY COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
January 6, 2015
9:00 a.m.

No.  315541
Ottawa Circuit Court
LC No.  12-002758-CZ

---

CITY OF COLDWATER,

        Plaintiff-Appellee,

v

CONSUMERS ENERGY COMPANY,

        Defendant-Appellant.

No.  320181
Branch Circuit Court
LC No.  13-040185-CZ

---

Before:  BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In docket no. 315541, Consumers Energy Company appeals as of right the trial court's grant of summary disposition in favor of the City of Holland in a declaratory judgment action concerning the City of Holland's right to provide electric service to a customer.  In docket no. 320181, Consumers Energy Company appeals as of right the trial court's grant of summary disposition in favor of the City of Coldwater in a declaratory judgment action concerning the City of Coldwater's right to provide electrical service to its own recently purchased parcel of property.  We affirm in both cases.

Docket No. 315541

The City of Holland ("Holland") filed this declaratory action contending that under the Michigan Constitution and by statute, a municipal utility such as itself can supply light and power within and outside its corporate boundaries to any customer not already receiving the

service from another utility. According to Holland, it obtained irrevocable franchises for the delivery of electric power to townships adjoining it, including Park Township, and a corporate vacant property owner in Park Township which was not already receiving electrical service sought to build a non-profit, tax-exempt structure on its property and sought to have Holland provide the electrical power service for the building. Also, according to Holland, defendant Consumers Energy Company ("Consumers") has asserted that that it has the exclusive right to serve the property, having served the property some years prior, and that the owner of the property, Benjamin's Hope, must thus receive electric power from Consumers pursuant to relevant statute. Holland thus sought a declaration that it was authorized to provide electrical service to Benjamin's Hope under the Michigan Constitution, its franchise agreement, statute, and the City of Holland Charter.

In lieu of an answer, Consumers filed a motion for summary disposition premised upon MCR 2.116(C)(8) and (10). Consumers claimed that it had previously provided electrical service to the customer at issue and was currently doing so and provided an affidavit and copies of electrical bills to support its position. Consumers further asserted that the case of *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27; 799 NW2d 155 (2011) already addressed most of the currently raised issues in Consumers' favor. Finally, Consumers asserted that the Michigan Public Service Commission (MPSC) had primary jurisdiction of the claims in this case and that MPSC Rule 411 required finding in Consumers' favor.

Holland responded that the only service Consumers provided was temporary and requested by Benjamin's Hope's contractor to be provided to a construction trailer temporarily located on the property. When the contractor removed its trailer from the property, it also requested that Consumers remove its facilities from the property, which Consumers did. Benjamin's Hope thereafter requested quotes from both Consumers and Holland for the provision of permanent electrical services, which both provided. Benjamin's Hope chose Holland, as it was allowed to do, as Consumers was not providing service to it or the buildings on the property when Holland began providing its service to Benjamin's Hope and the newly constructed buildings. Also, according to Holland, the MPSC does not have jurisdiction over this matter and MPSC Rule 411 does not apply to municipal utilities. Holland requested summary disposition in its own favor under MCR 2.116(I)(2).

The trial court granted Holland's motion for summary disposition and denied Consumers' motion. The trial court opined that Holland is not subject to regulation by the MPSC and that the customer that Holland began providing power to in April 2012 was not and had not been a Consumers' customer, it having never before received power from another utility.

On appeal, Consumers first argues that Holland's providing electrical service to Benjamin's Hope was a clear violation of MCL 124.3 because Consumers had been providing service to the property at issue when Holland entered into a contract with Benjamin's Hope to provide service to the property. Consumers contends that the trial court's erroneous conclusion otherwise is based upon the adoption of an illogical and incorrect definition of the word "customer" for purposes of MCL 124.3. We disagree.

Issues of statutory interpretation are questions of law that this Court reviews de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d

117 (2012). We also review de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are taken as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). The motion should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Id.*

Summary disposition may be granted under MCR 2.116(C)(10) if the documentary evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002). Summary disposition may be granted in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law. *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009).

Benjamin's Hope acquired the parcel of property at issue in 2011. Neither party disputes that at the time of acquisition, there were no buildings on the property. Apparently, the prior owner demolished all buildings that had been on the property sometime in 2007. Thus, no electrical power was being supplied to the parcel at the time of purchase, and for some time prior. Benjamin's Hope retained a contractor, CL Construction, to begin building what was to become a campus for autistic children. According to both parties, around August 2011 CL Construction requested that Consumers provide single phase electrical service to a construction trailer that CL Construction had temporarily placed on Benjamin Hope's property. CL Construction requested that Consumers send the electric bills to Benjamin's Hope. The first bill, sent to Benjamin's Hope, reflects that the service was for "Electric Temporary Service Overhead." Consumers provided electrical service to the construction trailer from September 2011 until April 13, 2012, when CL Construction removed its trailer from the property and requested that Consumers remove its facilities from the property. There is no dispute that Consumers mailed the monthly bills to Benjamin's Hope or that the bills were paid, although there is no indication as to who paid the bills.

In January 2012, Benjamin's Hope requested quotes from both Consumers and Holland for permanent electric service. Based upon the prices quoted, Benjamin's Hope signed a contract with Holland for electrical service on January 25, 2012. Consumers asserts that this was a violation of MCL 124.3(2) as it was providing electrical service to the premises at the time Holland entered into a contract with Benjamin's Hope.

MCL 124.3 provides:

(1) A municipal corporation may contract for adequate consideration with a person or another municipal corporation to furnish to property outside the municipal corporate limits any lawful municipal service that it is furnishing to property within the municipal corporate limits. A municipal corporation may sell

and deliver heat, power, and light in amounts as determined by the governing body of the utility, except for both of the following:

(a) Electric delivery service is limited to the area of any city, village, or township that was contiguous to the municipal corporation as of June 20, 1974, and to the area of any other city, village, or township being served by the municipal utility as of June 20, 1974.

(b) Retail sales of electric generation service are limited to the area of any city, village, or township that was contiguous to the municipal corporation as of June 20, 1974, and to the area of any other city, village, or township being served by the municipal utility as of June 20, 1974, unless the municipal corporation is in compliance with section 10y(4) of 1939 PA 3, MCL 460.10y.

(2) A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing.

(3) As used in this section:

(a) "Electric delivery service" has the same meaning as "delivery service" under section 10y of 1939 PA 3, MCL 460.10y.

(b) "Electric generation service" means the sale of electric power and related ancillary services.

(c) "Person" means an individual, partnership, association, governmental entity, or other legal entity.

As indicated in MCL 124.3(2), Holland could not provide electrical delivery service to customers "already receiving the service from another utility unless the serving utility consents in writing." Notably, the phrase "already receiving" is in the present tense. "Already" is defined in *The American Heritage Dictionary* (4th ed.) as "by this or a specified time."[1] "Receiving" is the present participle of the verb "receive" which, in turn is defined by the same source as "to take or acquire (something given, offered, or transmitted); get." When construing a statute, the Court's primary obligation is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute. *Chandler v Co of Muskegon*, 467 Mich 315, 319; 652 NW2d 224 (2002). If a statute specifically defines a term, the statutory definition is controlling. *People v Williams*, 298 Mich App 121, 126; 825 NW2d 671 (2012). Despite the Legislature's failure to define a term, the intent may be determined by examining the language of the statutes themselves. *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001).

---

[1] We consult a lay dictionary when defining common words or phrases that lack a unique legal meaning. *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007).

Plain statutory language must be enforced as written. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). This includes, without reservation, the Legislature's choice of tense. For example, in addressing a family court's subject matter jurisdiction, a panel of this Court concluded that the present tense language in MCL 712A.2 granting jurisdiction over a juvenile "whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity . . . is an unfit place for the juvenile to live in" requires the trial court to examine the child's situation at the time the petition for jurisdiction was filed. *In re MU*, 264 Mich App 270, 278-279; 690 NW2d 495 (2004). Thus, employing the dictionary definitions and the relevant tense to the terms used in the statute, MCL 124.3(2) prohibits Holland from providing electrical delivery service to customers presently taking or getting the service from another utility. The statute does not, however, prohibit Holland from providing electrical delivery service to customers who "have received" or "had received" the service from another utility at some point in time.

MCL 124.3(3)(a) refers us to MCL 460.10y for the definition of "electrical delivery service." MCL 460.10y(12)(a), in turn, defines "delivery service" as "the providing of electric transmission or distribution to a retail customer." As indicated by Consumers, neither MCL 124.3, nor MCL 460.10y(12)(a) make a distinction between temporary or permanent electrical service. Thus, whether Consumers was providing temporary or permanent service is irrelevant. However, under the definition of "delivery service," referred to in MCL 124.3 (and as defined in MCL 460.10y(12)(a)), Consumers must have been providing the service "to a retail customer." This is an essential phrase, which leads us to our primary issue.

"Customer" is not defined in MCL 124.3. But, "customer" *is* defined in MCL 460.10y(2). MCL 460.10y(2) states, "For purposes of this subsection, 'customer' means the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or any other entity taking service." "Building" is not defined in this statute, nor is "facilities." We thus look to the dictionary for guidance. We consult a lay dictionary when defining common words or phrases. *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007).

"Building" is defined in *The American Heritage Dictionary* (4th ed.) as "something that is built, as for human habitation; a structure." "Facilities" is the plural of "facility" which is defined as "something created to serve a particular function." Under the relevant definitions, the building or facility that Consumers was serving, i.e., the customer, was the CL Construction trailer. The buildings and facilities for which Benjamin's Hope contracted with Holland for electrical service were not "customers" of Consumers'. Consumers never provided service to such buildings, as they did not previously exist and Holland was free to provide electrical service to them without violating MCL 124.3.

The limiting language "for purposes of this subsection . . . ." in MCL 460.10y(2) is acknowledged. However, because MCL 124.3(3)(a) refers us back to MCL 460.10y for the definition of "delivery service", and "delivery service" in MCL 460.10y contains the word "customer," it would make sense to look within that same statute for the definition of that essential word. The doctrine of *noscitur a sociis,* i.e., that "a word or phrase is given meaning by its context or setting," assists us in reaching this conclusion. See, *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420-421; 662 NW2d 710 (2003). In addition, statutes that relate to the

same matter are considered to be *in pari materia. People v Perryman*, 432 Mich 235, 240; 439 NW2d 243 (1989). "Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007)(emphasis in original). The general rule of *in pari materia* requires courts to examine a statute in the context of related statutes. *People v Lewis*, 302 Mich App 338, 342-343; 839 NW2d 37 (2013).

While Consumers here argues that "customer" cannot be defined as an inanimate object, Consumers appears to ignore the fact that its own arguments are based upon the same principle. Consumers principle argument is that because it first served the property, that being the land upon which buildings had never stood or it had never run wires to, it could claim the property (an inanimate object) as its customer forever, no matter who owned it at any point in time thereafter and whether or not any buildings stood upon it and were receiving electrical service.

The trial court appropriately determined that Holland could provide electrical service to Benjamin's Hope without violating MCL 124.3.

Consumers next contends that the trial court erred in allowing Holland to provide electrical serve to Benjamin's Hope due to its misinterpretation or failure to apply MPSC Rule 460.3411(11) and its failure to follow the binding precedent established by the Michigan Supreme Court in *Great Wolf Lodge*, 489 Mich 27. We again disagree.

MCL 460.6 provides, in relevant part:

> (1) The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in section 6d, and except as otherwise restricted by law . . . .

Although broadly stated, § 6(1) is not a grant of specific power. It is merely an outline of the PSC's jurisdiction. *Attorney General v Pub Serv Comm*, 189 Mich App 138, 145; 472 NW2d 53 (1991). Under the express language above, the PSC has no jurisdiction over a municipally owned utility such as Holland. Lacking such jurisdiction, it cannot impose its rules upon Holland. That its rules were not intended to apply to municipally owned utilities is borne out by the language in the rules themselves.

MI ADC R 460.3411 (Rule 411) provides, in relevant part:

> (1) As used in this rule:

> (a) "Customer" means the buildings and facilities served rather than the individual, association, partnership, or corporation served.

***

-6-

(2) Existing customers shall not transfer from one utility to another.

\*\*\*

(11) The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load.

According to Consumers, because it supplied electrical service to the Benjamin's Hope property in 2004, 2006, 2008 and then again in 2011 to the CL Construction trailer (which qualified as a "customer") it was the first utility serving the customer and thus was entitled to serve the entire electric load on the premises of that customer. However, MI ADC R 460.3102 defines "utility" as "an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the commission." Again, a municipal utility does not, by statute, operate under the jurisdiction of the commission. Thus, a municipal utility such as Holland would never, according to Rule 411, meet the definition of utility and would thus never, ever, be the first utility to serve a customer under any circumstances. Clearly, Rule 411 was not intended to apply to municipal utilities such as Holland.

The Michigan Legislature also specifically stated as much, giving municipally owned utilities the *option* of complying with Rule 411 if it provides service to customers outside of its municipal boundaries (as in this case). MCL 460.10y provides:

(3) With respect to any electric utility regarding delivery service to customers located outside of the municipal boundaries of the municipality that owns the utility, a governing body of a municipally owned utility may elect to operate in compliance with R 460.3411 of the Michigan administrative code, as in effect on June 5, 2000. However, compliance with R 460.3411(13) of the Michigan administrative code is not required for the municipally owned utility.

Given the above, Rule 411 is inapplicable.

Consumers contends that the holding in *Great Wolf Lodge*, 489 Mich 27, requires a different conclusion. However, that case is factually distinguishable. First and foremost, plaintiff, *Great Wolf Lodge*, contracted with Cherryland Electric Cooperative to provide electric services to property where it intended to build a water park resort. Cherryland had provided electric services to the farm buildings located on the property when plaintiff purchased it. While plaintiff sought bids from competing electric companies and indicated that Cherryland coerced it into contracting with it for electrical services to avoid construction delay, the fact remains that the plaintiff did enter into a three-year contract to have Cherryland provide electrical services to its newly constructed buildings. A rate dispute followed, two years after which the plaintiffs sought a declaratory ruling that it could receive electrical service from whatever provider it chose. In this case, by contrast, Benjamin's Hope did not enter into a contract with Consumers for electrical services, receive the services for two years, and then seek to switch providers. Instead, a contractor, CL Construction, contacted Consumers and requested temporary service to its construction trailer located on Benjamin's Hope's property during construction. True, it asked that the bills be sent to Benjamin's Hope, but there is no evidence that there was a contract

-7-

for services or that the trailer was anything other than a temporary structure owned by a third party.

In addition, *Great Wolf Lodge* was an appeal from a PSC decision. A party aggrieved by a PSC order must show by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable. MCL 462.26(8). A final order of the PSC must be authorized by law and, if a hearing is required, supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. A reviewing court gives due deference to the PSC's administrative expertise, and is not to substitute its judgment for that of the PSC. *In re Mich Consol Gas Co Application*, 304 Mich App 155, 164; 850 NW2d 569 (2014). The Court's review in *Great Wolf Lodge* was thus deferential and limited and it reinstated the PSC decision, whereas our review here is de novo. We are not so limited.

Next, the Court in *Great Wolf Lodge* stated that:

Rule 411(11) grants the utility first serving buildings or facilities on an undivided piece of real property the right to serve the entire electric load on that property. The right attaches at the moment the first utility serves "a customer" and applies to the entire "premises" on which those buildings and facilities sit. The later destruction of all buildings on the property or division of the property by a public road, street, or alley does not extinguish or otherwise limit the right. This conclusion is consistent with the rule's purpose of avoiding unnecessary duplication of electrical facilities. 489 Mich at 39.

In this case, it could be argued that there would be no unnecessary duplication of electrical facilities as it appears both utilities currently stand ready and able to provide the required service. It is Consumers, in fact, who quoted Benjamin's Hope with a $35,000 installation charge for their service when Holland quoted no up-front installation charge for electrical services.

Finally, there was no dispute that the PSC had jurisdiction over the *Great Wolf Lodge* dispute because Cherryland was a public utility and the disagreement was between the property owner who sought/received service and submitted to the jurisdiction of the PSC and the public utility concerning a rate. MCL 460.58 provides that the PSC is to investigate a complaint by a customer that a rate or regulation by a public utility is unjust, inaccurate or improper. Here, in contrast, the dispute is between a public utility and a municipal utility. The Court in *Great Wolf Lodge* opined:

Given that Cherryland is entitled to the benefit of the first entitlement in Rule 411(11), it is irrelevant that TCLP [the utility from whom Great Wolf wished to receive service] is a municipal corporation not subject to PSC regulation. Rule 411(11) both grants and limits rights. It grants a right of first entitlement to Cherryland while limiting the right of the owner of the premises to contract with another provider for electric service. Plaintiff put that limitation directly at issue by seeking a declaratory ruling that it is free to contract for electric service with any electricity provider. [489 Mich at 41-42.]

-8-

Again, it is of utmost importance that the parties before the PSC and then before the *Great Wolf* Court were a plaintiff who was receiving or going to receive service and a public utility. The *Great Wolf Court*'s note that Rule 411 limits the rights of the owner of the premises has no bearing on the case at hand where the owner of the premises is not a party to the dispute. We are not called upon to determine the rights of the premises owner. Rule 411 may well limit the rights of the premises owner, but it does not limit the rights of a municipal utility such as Holland because the PSC has no jurisdiction over it. The *Great Wolf Court* implicitly acknowledged the distinction:

> Assuming arguendo that MCL 124.3 does not restrict TCLP from contracting with plaintiff to provide electric service, Rule 411(11) restricts plaintiff from seeking that service from any entity other than Cherryland. Plaintiff may not circumvent the limitation of Rule 411(11) by attempting to receive service from a municipal corporation not subject to PSC regulation. Thus, MCL 124.3 has no application to the instant dispute. 489 Mich at 42.

Incidentally, MCL 124.3 would have precluded TCLP, a municipal utility, from contracting with Great Wolf Lodge, because Great Wolf Lodge was undeniably receiving service from Cherryland, under its contract with them, for over two years. But, the Supreme Court's point to be gleaned is this: even if MCL 124.3 did not so restrict a municipal utility, Rule 411 would still restrict Great Wolf Lodge because it, as an owner of premises who had service first provided by a public utility, could have its rights limited by Rule 411. Because the instant dispute is between the municipal utility and a public utility, MCL 124.3 does have application and, as previously indicated, it does not restrict Holland from contracting with Benjamin's Hope to provide electrical service. We thus affirm the trial court's ruling in docket no. 315541.

Docket No. 320181

The City of Coldwater ("Coldwater") filed this declaratory action contending that under the Michigan Constitution and by statute, a municipal utility such as itself can supply light and power within and outside its corporate boundaries to any customer not already receiving the service from another utility. Coldwater sought to provide electrical service to a 6.2 acre parcel of land in Coldwater Township it purchased in July 2011 which, at that time, contained a vacant pole building that had a service drop owned by Consumers attached to it but, according to Coldwater, had no service provided to it since prior to the time Coldwater purchased the parcel. Coldwater asserted that it intends to remove the pole building and build new facilities and further intends to provide its own electrical supply (through the Coldwater Board of Public Utilities) but that Consumers insists that it has the exclusive right to provide electrical power to the property.

Consumers moved for summary disposition pursuant to MCR 2.116(C)(10). Consumers argued that when Coldwater purchased the property, there was an existing customer of Consumers on the property and Consumers had a history of providing services to the premises up until roughly a month prior to Coldwater's purchase of the property. Consumers stated that Coldwater's claims were thus precluded by MCL 124.3 and MPSC Rule 411.

Coldwater filed a counter-motion for summary disposition in its own favor based upon MCR 2.116(C)(10). Coldwater contended that electrical service to the existing pole building had

been discontinued prior to Coldwater's acquisition of the property such that there was no existing electrical provider to the customer and that Coldwater's actions conformed to MCL 124.3. Coldwater further asserted that it was not required to operate in compliance with Rule 411 pursuant to MCL 460.10y and that the rule thus has no applicability. Coldwater relied, in part, on the trial court's opinion in the Holland case, above, docket no. 315541.

The trial court granted summary disposition in favor of Coldwater. In its opinion, the court noted that municipally owned utilities are exempted from the power and jurisdiction of the MPSC and that Coldwater, being both the owner of the premises and the provider of the utility, was exempt from such power as both an owner and provider. The trial court also noted that MCL 124.3 precludes a municipal electrical service provider from providing service only if the customer was already receiving service from another provider and that there were no buildings or facilities receiving electrical service at the time Coldwater purchased the parcel in question, nor had Coldwater ever received service from Consumers.

On appeal, Consumers argues that the trial court erred in creating an exception to the applicability of MPSC Rule 411 on the basis that Coldwater was both a utility and the customer when Rule 411 allows for no such exception. Contrary to Consumers argument, the trial court did not find that *because* the owner of the premises is a municipal utility it *also* cannot be regulated by the MPSC in its capacity as a customer. It simply found, though inartfully worded, that if Coldwater were simply a premises owner and nothing more, *Great Wolf Lodge* would likely apply. However, that was not the factual scenario before the trial court. The trial court could not disregard that Coldwater was the municipally owned service provider that would be providing service to itself. Its status as a municipally owned utility must have been taken into consideration for purposes of determining whether Rule 411 applied. If Coldwater were not going to be providing the service to itself, the parties would likely not be before the court arguing whether Rule 411 even applied. If Coldwater were simply the premises owner and Consumers and another public utility were involved, the application of Rule 411 would be a foregone conclusion.

However, as discussed in Holland, above, Rule 411 does not apply to municipal utilities. Coldwater in this case is a municipally owned utility seeking to provide services to its own property. Its identity as a customer and a municipally-owned utility are not separable. This is necessarily so, given that it cannot contract with itself to provide a service to itself.

As thoroughly discussed in docket no. 315541 above, the PSC has no jurisdiction over municipally owned utilities (see MCL 460.6) and thus cannot impose its rules upon municipally owned utilities such as Coldwater. MI ADC R 460.3102 defines "utility" as "an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the commission" such that a municipally owned utility could never be the first to serve a premises under Rule 411, thus indicating that Rule 411 was never intended to apply to municipally owned utilities. And, MCL 460.10y gives municipally owned utilities the *option* of complying with Rule 411 if it provides service to customers outside of its municipal boundaries (as in this case) clearly setting forth the Legislature's recognition that municipally owned utilities are not subject to Rule 411. The application of Rule 411 would be particularly odd in this circumstance given that Coldwater, who owns the property, seeks to provide its own electrical service to the property

and the property at issue is set to contain Coldwater's electric substation. The trial court did not err in finding Rule 411 inapplicable.

Consumers also asserts that the trial court erred in its interpretation of MCL 124.3 by concluding that there was no "customer" on the premises as issue in this case, given that when Coldwater purchased the property at issue there was an existing customer that had been receiving electrical service from Consumers for more than 20 years. We disagree.

MCL 124.3(2) provides that "A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing." As explained in docket no. 315541, MCL 124.3(2) would thus prohibit Coldwater from providing electrical delivery service to customers presently receiving (taking) the service from another utility. MCL 124.3(3) refers us to MCL 460.10y for the definition of "electrical delivery service." MCL 460.10y(12)(a), in turn, defines "delivery service" as "the providing of electric transmission or distribution to a retail customer." "Customer" is not defined in MCL 124.3. But, "customer" *is* defined in MCL 460.10y. MCL 460.10y(2) states, "For purposes of this subsection, 'customer' means the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or any other entity taking service."

As indicated by Consumers, the definition of customer set forth in MCL 460.10y(2) is the same as the definition of "customer" set forth in Rule 411. Rule 411 provides, in relevant part:

(1) As used in this rule:

(a) "Customer" means the buildings and facilities served rather than the individual, association, partnership, or corporation served.

However, Consumers contends that the definition of "customer" should be interpreted, for purposes of MCL 124.3, to mean *the premises* of the buildings and facilities served. Consumers bases this argument on Rule 411(11), which states, "The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load." This provision of Rule 411 does not expand the definition of "customer" in Rule 411(1)(a), let alone the definition in MCL 124.3. It is a separate provision that defines the scope of what the first utility may serve. It distinctly states that the utility may serve the premises *of the customer*—it does not include "premises" <u>within</u> the definition of the customer.

The *Great Wolf Lodge* decision does not direct otherwise. Consumers states that after this decision, the Rule 411 definition of customer is the premises of the buildings and facilities that existed at the time service was established. In context, what the *Great Wolf Lodge* Court actually stated was:

[It is] undisputed that Cherryland was the first utility to provide electric service to buildings and facilities on the Oleson farm. Once Cherryland did so, Rule 411(11) gave it the right to serve the entire electric load on the premises. That right was unaffected by subsequent changes in the "customer," because the right extends to the "premises" of the "buildings and facilities" that existed at the time

service was established.  Later destruction of the buildings and facilities on the property did not extinguish that right.  [489 Mich at 41.]

Thus, *Great Wolf Lodge* was not defining "customer" for purposes of Rule 411 (and was not expanding the definition) but was explaining the parameters of Rule 411(11) and the rights therein.

Under both MCL 124.3 and Rule 411(1)(a), "customer" means the buildings and facilities served.  "Building" is defined in *The American Heritage Dictionary* (4th ed.) as "something that is built, as for human habitation; a structure." "Facilities" is the plural of "facility" which is defined as "something created to serve a particular function." *The American Heritage Dictionary* (4th ed.).  Under the relevant definitions, there was no customer already receiving the service from Consumers.  According to the evidence, Coldwater purchased the property at a public auction on July 21, 2011.  The prior owner of the property had requested that electrical service be discontinued to the property (which contained a pole barn) on June 28, 2011.  Thus, at the time Coldwater acquired the property and sought to demolish the pole barn building and provide electrical service to potential newly built buildings, there was no customer (buildings or facilities) already receiving (present tense) the service from Consumers.  The trial court did not err in its interpretation of MCL 124.3 and whether a "customer" was receiving service.

Consumers finally argues that the trial court misinterpreted or failed to apply Rule 411 as interpreted by the Michigan Supreme Court in *Great Wolf Lodge*, 489 Mich 27, and thus erred in allowing Coldwater, as a municipal utility, to provide electrical service in this case.  The same analysis of the *Great Wolf Lodge* case engaged upon and the conclusion reached in docket no. 315541 applies in this case.  The only distinguishing factor in this case is that the property owner and the municipally-owned utility are one and the same.  This would appear to still favor Coldwater, however, since these roles cannot be separated.  We thus affirm the trial court's grant of summary disposition in favor of Coldwater.

Affirmed.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto