# STATE OF MICHIGAN

# COURT OF APPEALS

FOUR G. CONSTRUCTION, INC. d/b/a
GEEDING CONSTRUCTION, INC.,

    Petitioner-Appellee,

v

DEPARTMENT OF TREASURY,

    Respondent-Appellant.

UNPUBLISHED
February 23, 2016

No. 324065
Tax Tribunal
LC No. 00-456420

Before: O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

Respondent, the Department of Treasury, appeals as of right the September 18, 2014 order of the Michigan Tax Tribunal (MTT) granting partial summary disposition to petitioner, Four G. Construction, under MCR 2.116(I)(2) on the issue of whether petitioner was required to pay a $47,328 penalty that was assessed by respondent. The September 18, 2014 order also granted partial summary disposition to respondent under MCR 2.116(C)(10) on the issue of whether petitioner should be required to pay $5,242 in interest assessed by respondent.[1] Because we agree with the MTT, we affirm the MTT's partial grant of summary disposition to petitioner under MCR 2.116(I)(2) on the issue of the penalty assessed by respondent.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner is a contractor whose customers are primarily large oil and gas companies. Petitioner's primary task is conducting "integrity digs" on oil pipelines. Prior to 2010, petitioner had not conducted any work in Michigan. Petitioner began getting work in Michigan in 2010 and filed a Michigan Business Tax (MBT)[2] annual return for the 2010 tax year that stated its total tax liability for that year was $22,098. According to the affidavit of petitioner's Senior

---

[1] Petitioner has not filed a cross-appeal in regard to the interest assessed; thus, we do not consider whether the interest assessed by respondent was proper.

[2] Our Legislature has since repealed the MBT and replaced it with the Corporate Income Tax Act, MCL 206.601 et seq. See 2011 PA 39.

Vice President, Dale R. Geeding, a contract dispute in the summer of 2010 with Enbridge, Inc.—the company for which petitioner did most of its work in Michigan—created uncertainty over whether petitioner would receive any work from Enbridge in 2011.

In 2011, petitioner sent respondent a first-quarter estimate payment in the amount of $5,530; the estimate was based on petitioner's tax revenues from 2010. Petitioner's Vice President of Strategic Planning and former CFO, David J. Warmbrodt, stated in his affidavit, that in 2011, petitioner expected "little to no Michigan revenue" and that it was Warmbrodt's understanding that "MBT taxpayers who estimated and paid federal income tax pursuant to the Internal Revenue Code, 26 USC 6655(e), were likewise permitted to use the same methodology to annualize income for estimating quarterly estimates for seasonal income under the Michigan Business Tax Act" (MBT).[3] Warmbrodt attested that he "used the same dates and same method of determining estimated quarterly payments that [petitioner] used in filing estimated returns for federal income tax purposes."

Warmbrodt averred that petitioner expected its second quarter to produce little or no Michigan revenue and projected a taxable loss in Michigan for the first five months of 2011. Therefore, petitioner did not timely remit a second-quarter estimate to respondent by the July 15, 2011 deadline. However, in early July 2011, petitioner received work orders for projects in Michigan. Two more work orders followed in August. This increase in work caused Warmbrodt to feel it was necessary to make a second-quarter payment on September 21, 2011. Petitioner made this payment; however, it is undisputed that the payment was untimely. Petitioner made timely third and fourth quarter payments on October 18, 2011 and January 17, 2011. Each quarterly payment was for $5,530. Petitioner's total tax liability for 2011 was $254,694, requiring petitioner to submit a payment of $232,574 to cover the amount owed over and above the quarterly payments.

On April 30, 2012, respondent sent petitioner a notice indicating that it had received the four quarterly payments noted above as well as petitioner's $232,574 payment. The notice also assessed petitioner interest in the amount of $5,242 and a penalty of $47,328. Petitioner objected to the interest and penalty assessment, arguing that the safe-harbor provision of the MBT, MCL 208.1501(4)(b),[4] sheltered it from paying a penalty because its tax liability for the prior tax year—2010—was less than $20,000,[5] and its four estimated quarterly payments in 2011, in the aggregate, were over $20,000. Petitioner cited a letter from its accounting firm, which opined

---

[3] The MBT specifically references 26 USC 6655(e) in describing a methodology that can be utilized to calculate a taxpayer's estimated quarterly payments. See MCL 208.1501(3).

[4] MCL 208.1501(4)(b), now repealed, provided a safe harbor against the assessment of penalty interest "if the preceding year's tax liability under this act was $20,000.00 or less and if the taxpayer submitted 4 equal installments the sum of which equals the immediately preceding tax year's tax liability."

[5] The assertion that its liability for the 2010 tax year was less than $20,000 came after petitioner filed an amended return for the 2010 tax year, revising its tax liability from $22,098 to $19,447.

that petitioner satisfied the requirements in the safe-harbor statute, MCL 208.1501(4)(b). The letter noted that the second-quarter estimate was paid late, but inadvertently so, because petitioner expected there would be no Michigan tax based on the lack of work in Michigan at the time, but that when it did become aware of increased revenues, it sent an estimated payment in September 2011. The letter also concluded that the penalty assessed by respondent was excessive and should be waived. In sum, petitioner argued that it was entitled to a penalty waiver because it relied on its CPA, did not anticipate the large and abnormal amount of work it received in the third quarter of 2011, and understood the MBT as allowing it to use a federal "5 month rule"[6] for determining whether it was required to submit a second-quarter estimate.

Respondent denied the request to waive the penalty and interest imposed, stating that the safe-harbor statute upon which petitioner attempted to rely required four timely, quarterly payments. Respondent determined that petitioner failed to meet that requirement because the second-quarter estimate payment was late; it was due on July 15, 2011, but not received until September 21, 2011. "Based on the foregoing," stated respondent, "your request for waiver of underpaid estimate penalty is denied."[7]

The matter proceeded to the MTT, after which respondent moved for summary disposition, arguing that petitioner was not entitled to a penalty waiver under the safe-harbor statute and was not otherwise entitled to a waiver of the penalty for failing to submit timely estimates to respondent. Petitioner filed a response to this motion and attached Warmbrodt's affidavit as well as several letters it had sent petitioner explaining its rationale for calculating its 2011 quarterly estimates. An administrative law judge (ALJ) issued a proposed order and judgment granting respondent's motion for summary disposition with respect to the $5,242 in interest assessed, but granting petitioner summary disposition under MCR 2.116(I)(2) with respect to the $47,328 penalty assessed. The proposed order found that the safe-harbor statute, MCL 208.1501(4)(b), only concerned interest and not a penalty. However, the proposed order determined that petitioner was entitled to a penalty waiver under MCL 205.24(4) after looking to eight "non-determinative factors" for assessing a penalty waiver listed in Mich Admin Code, R 205.1013(8), and accepting the contentions in Warmbrodt's affidavit that the third quarter income petitioner received was unexpected and that petitioner had relied on the advice of its CPA in determining its MBT liability, including quarterly estimates.

---

[6] This appears to be a reference to the calculation of an expected five-month taxable loss, which petitioner asserted excused it from making the quarterly payment.

[7] It appears from all the materials submitted that it has always been respondent's position, just as it was in the denial letter, that the penalty was imposed because the second-quarter payment was late, not because the payments were deficient in any other way.

Respondent filed exceptions to the proposed order, arguing that the ALJ had impermissibly resolved factual disputes in petitioner's favor in granting petitioner summary disposition under MCR 2.116(I)(2), and that petitioner was not entitled to a penalty waiver under MCL 205.24(4). The MTT adopted the ALJ's proposed order and judgment in a final opinion and judgment, concluding that the ALJ had not engaged in fact-finding. Rather, the MTT recognized that the ALJ determined there was no genuine issue with respect to any material fact, thereby allowing for summary disposition. The MTT also recognized that MCR 2.116(I)(2) permits the court to grant summary disposition to the non-moving party—in this case, petitioner—when it appears that the non-moving party, rather than the moving party, is entitled to judgment. Respondent now appeals as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW

In the absence of fraud, we review decisions of the MTT to determine if the decision was the result of the "misapplication of the law or adoption of a wrong principle." *Briggs Tax Serv v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010). The MTT's factual findings, if any, if supported by " 'competent, material, and substantial evidence on the whole record,' " are deemed conclusive. *Id.* quoting Const 1963, art 6, § 28. Questions of statutory interpretation and the "grant or denial of a motion for summary disposition" are reviewed de novo. *Id.*

### B. SUMMARY DISPOSITION

Respondent initially moved for summary disposition pursuant to MCR 2.116(C)(10). After weighing the documentary evidence presented in support, along with petitioner's response to the motion and its documentary evidence, the ALJ recommended, and the MTT upheld, a grant of summary disposition to petitioner under MCR 2.116(I)(2). "Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and other documentary evidence show that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law." *Rataj v Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014) (citation and quotation marks omitted). "On the other hand, summary disposition is proper under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Id.* (citation and quotation marks omitted). See also *Holland v Consumers Energy Co*, 308 Mich App 675, 681-682; 866 NW2d 871 (2015) ("Summary disposition may be granted in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law."). "A question of fact exists when reasonable minds can differ on the conclusions to be drawn from the evidence." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009).

## C. PENALTY WAIVER

The MTT granted partial summary disposition to petitioner under MCR 2.116(I)(2) after concluding that there was no genuine issue as to any material fact and that petitioner's failure to timely remit the tax payment at issue was due to reasonable cause, which, under MCL 205.24(4), entitled it to a waiver of the penalty imposed. In this regard, MCL 205.24(4) provides that respondent "shall" waive a penalty imposed: "[i]f a return is filed or remittance is paid after the time specified and it is shown to the satisfaction of the department that the failure was due to reasonable cause and not to willful neglect . . . ." Respondent has promulgated rules delineating certain factors that "alone do not constitute reasonable cause for failure to pay" but when "considered with other facts and circumstances may constitute reasonable cause." Mich Admin Code, R 205.1013(8).[8] Those factors are:

(a) The compliance history of the taxpayer.

(b) The nature of the tax.

(c) The taxpayer's financial circumstances, including the amount and nature of the taxpayer's expenditures in light of the income the taxpayer, at the time of the expenditures, could reasonably expect to receive before the due date prescribed for paying the tax.

(d) The taxpayer was incorrectly advised by a tax advisor who is competent in Michigan state tax matters after furnishing the advisor with all necessary and relevant information and the taxpayer acted reasonably in not securing further advice.

(e) The taxpayer's accounting and financial system that is designed to ensure timely filing breaks down due to unavoidable circumstances and, upon discovery, the taxpayer promptly complies.

(f) The death or serious incapacitating illness of the taxpayer or the person responsible for filing the return or making the payment or a member of his or her immediate family.

(g) Lack of funds to make timely payment.

(h) A taxpayer's reliance on an employee or agent to file the return or make the payment. [Mich Admin Code, R 205.1013(8).]

---

[8] In addition, Mich Admin Code, R 205.1013(7) sets forth a non-exhaustive list of examples that will generally establish good cause for failure to pay. Those examples are not at issue in this matter.

Our review of the record reveals that partial summary disposition in favor of petitioner on the issue of reasonable cause and waiver of the penalty imposed was appropriate. Respondent moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact and that the penalty imposed against petitioner should be upheld.[9] Respondent attached documentary evidence to its motion, including petitioner's tax returns, the penalty assessed in this case, the interest assessed in this case, the letter rejecting petitioner's request to waive the penalty, discovery requests, and documents showing some of the work petitioner performed in Michigan in 2011. Essentially, all of respondent's documentary evidence showed that the quarterly payment at issue was late. None of respondent's evidence went to the heart of the matter in this case, which was, for purposes of the penalty-waiver provision, whether the late payment was due to reasonable cause or willful neglect.

In response to respondent's motion, petitioner presented documentary evidence purporting to establish that its late quarterly payment was due to reasonable cause, not willful neglect. This included Warmbrodt's affidavit in which he indicated that he believed the late quarterly payment was permitted because no tax was due for the prior quarter under federal law, and he thought the same principle applied under the MBT. The affidavit further stated that petitioner believed it could avoid a penalty by paying four installments equal to the prior year's tax liability. Petitioner also included a letter from a tax professional indicating the tax advice given and providing reasons—including the minimal expected income during the second quarter and the unexpected third-quarter increase in income—for the late quarterly payment made in this case. Further, Warmbrodt's affidavit indicated that when he realized there would be more revenue in the third quarter, petitioner submitted an estimated quarterly payment, albeit in an untimely fashion. Warmbrodt averred that he believed petitioner was permitted to follow federal law and could avoid penalty by paying four installments totaling the prior year's liability, even if one of those installments was untimely.

In addition to providing documentary evidence about petitioner's methodology for making quarterly tax payments, petitioner provided documentary evidence detailing the work it performed in Michigan during 2011. Geeding's affidavit outlined the uncertain nature of the work to be performed for Enbridge, given the lack of a contractual agreement. Geeding averred that the third-quarter spike in work orders from Enbridge was unexpected. Warmbrodt's affidavit contained similar assessments about the nature of the work received from Enbridge, and detailed how the work orders increased dramatically after the due date for the second-quarter tax payment had passed.

On the evidence presented, the MTT did not err in finding there was no genuine issue of material fact on the issue of reasonable cause, or in granting partial summary disposition to petitioner on the issue of the penalty waiver under MCL 205.24(4). Looking to the factors in Mich Admin Code, R 205.1013(8), it is apparent that this was petitioner's second year paying

_____

[9] We note the inconsistency in respondent's positions in this case: respondent first argued there was no genuine issue of material fact, and then, after receiving an unfavorable ruling, respondent reversed this position and argued that a factual dispute existed.

Michigan taxes under the MBT, which was relatively new at the time and which was lacking in published guidance by respondent for determining how to proceed in situations such as the one at issue in this case. And, as the ALJ aptly pointed out, MCL 208.1501 did not explain how a taxpayer was to make estimated quarterly payments when it had no liability for a particular quarter. Further, petitioner did not have a history of willful neglect. See Mich Admin Code R, 205.1013(8)(a-b). In addition, petitioner received advice from its tax advisor, who, despite not having extensive experience under the MBT, was an experienced tax advisor, and there is no indication that the tax advisor lacked competence. The letter from the tax advisor, along with Warmbrodt's affidavit, indicated that petitioner believed it could avoid paying a penalty by paying all four quarterly installments in an amount equal to the prior tax year's liability. See Mich Admin Code, R 205.1013(d). Also, Warmbrodt, relying on federal tax law, believed that the late second quarter payment was permitted because no tax had been due prior to the receipt of the new work orders. Once petitioner realized that its revenues were increasing at an unexpected rate,[10] it made a payment, albeit an untimely payment, for the second quarter. See Mich Admin Code, R 205.1013(c), (e).[11] Thus, as the ALJ recognized, petitioner attempted to correct any issue with the second-quarter estimate by submitting the late payment. In short, regardless of whether petitioner was correct in its assessment and interpretation of the MBT's requirements, the unrefuted evidence in this case demonstrated an attempt and desire to make quarterly payments in the MBT, and not a willful neglect to pay taxes that were due. As such, we agree with the MTT's decision that it is apparent petitioner acted with reasonable cause when it failed to make the 2011 second-quarter payment in a timely fashion. Again, on the unrefuted evidence presented, this was not a situation where petitioner willingly refused to make the second-quarter payment, nor was it a situation where, as respondent contends, petitioner failed to exercise any reasonable care in determining how to proceed. Rather, the documentary evidence shows reasonable cause on the part of petitioner. It is the existence of reasonable cause that entitles petitioner to a waiver of the penalty under MCL 205.24(4) (stating that the treasurer "shall waive the penalty" imposed upon the requisite showing of "reasonable cause" on the part of the taxpayer).

## D. THE MTT DID NOT MAKE FACTUAL DETERMINATIONS

Although respondent disagrees about the import of the evidence discussed above, the bulk of respondent's argument alleges that the MTT made factual determinations, credibility determinations, and resolved factual disputes in favor of petitioner. Respondent is correct that a court, on a motion for summary disposition under MCR 2.116(C)(10), is not to assess credibility or make factual determinations. *Dillard v Schlussel*, 308 Mich App 429, 445; 865 NW2d 648

---

[10] The documentary evidence petitioner submitted showed that its taxable revenues in 2011 were significantly higher than they were in 2010 and 2012.

[11] Respondent argues that unexpected income is not a factor that can be considered under Mich Admin Code, R 205.1013(8). While unexpected income is not expressly enumerated, respondent's argument fails to account for the fact that the list of factors is not intended to be exhaustive, as the rule requires the decision-maker to consider the factors along with "other facts and circumstances."

(2014). However, respondent's assertions about the MTT making findings of fact or credibility determinations are not supported by the record. The MTT did not, as respondent accuses it of doing, simply accept petitioner's version of the facts as true, nor did it resolve any credibility determinations in petitioner's favor. Rather, the MTT viewed the undisputed facts in this case when it granted summary disposition to petitioner. Indeed, the only evidence before the MTT with regard to reasonable cause was that which was presented by petitioner. Despite the fact that petitioner asserted essentially the same defense of reasonable cause from the outset of its challenge to the penalty imposed, and despite the fact that the parties conducted discovery, respondent was unable to present any evidence to contradict petitioner's evidence or create a genuine issue of material fact. As such, the MTT's decision to grant partial summary disposition to petitioner on the issue of the penalty fit squarely within MCR 2.116(I)(2). See *Rataj*, 306 Mich App at 747 (citation and quotation marks omitted) ("On the other hand, summary disposition is proper under MCR 2.116(I)(2) 'if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law.' "). The MTT reviewed the pleadings and documentary evidence, determined that petitioner, as the non-moving party, was entitled to judgment, and rendered judgment in favor of petitioner.

In arguing that the MTT erred in finding no genuine issue of material fact, respondent argues that the MTT did so improperly because respondent "had not conceded these facts." Respondent also asserts that it "disputes" some of the facts that petitioner presented in this case. It is of little relevance whether respondent conceded the facts; what is relevant is that petitioner presented evidence applicable to the issue in dispute, which respondent failed to do in this case. As noted, nothing in the record contradicted petitioner's evidence or showed the existence of a genuine issue of material fact. Also, while respondent's appellate brief declares that it "disputes" some of the facts petitioner presented, none of the documentary evidence that respondent submitted in this case refutes any of the pertinent facts. Respondent's mere assertion, without documentary support, does not mean that a fact is disputed, for purposes of summary disposition review. See *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) ("A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)."); *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (speculation and conjecture do not create a genuine issue of material fact).

Finally, we reject any assertion by respondent that its failure to show a genuine issue of a material fact was caused by any inability to respond to petitioner's response to its motion for summary disposition. Respondent moved for summary disposition after the completion of discovery. Respondent, as the party moving for summary disposition, bore the burden of first identifying the matters on which there was no factual dispute, and second, bore the burden of supporting its position with documentary evidence. MCR 2.116(G)(4); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Respondent did not present evidence in support of its motion to establish that there was no genuine issue of material fact on the issue of reasonable cause. Further, in challenging the ALJ's decision, respondent failed to present evidence or articulate *how*, beyond its bald assertions, it could create a genuine issue of material fact; likewise, its briefing and argument before this Court fail to show how it

can create a genuine issue of material fact.[12]  In fact, respondent's documentary evidence had little bearing on the issue of reasonable cause.  Thereafter, as the MTT correctly recognized, petitioner's evidence on the issue of reasonable cause showed that there was no genuine issue of material fact, and the grant of partial summary disposition to petitioner on the issue of the penalty imposed was squarely within the confines of MCR 2.116(I)(2).

Affirmed.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Jane M. Beckering

---

[12] Thus, even assuming respondent was not able to reply to petitioner's response before the ALJ heard the matter, we conclude that, even when given the chance to challenge the ALJ's decision, respondent failed to show how a reply could have made a difference, i.e., it has never presented any evidence to demonstrate the existence of a genuine issue of material fact.