Marilyn Kelly, J.
This case requires us to resolve three issues. First, whether a utility’s right of first entitlement to provide electrical service to “the entire electric load on the premises” of a “customer” ceases when the “customer” on the property changes.[1] Second, whether the Public Service Commission (PSC) is required to impose interest on a refund it awards when it determines that a utility has overcharged a consumer. Third, whether the PSC is required to impose a fine whenever a utility “neglects” to comply with one of its orders.[2]
We conclude that a utility’s right of first entitlement set forth in Rule 460.3411 (Rule 411) of the Michigan Administrative Code extends to the entire premises initially served. And the right is not extinguished when a customer is no longer present on the premises. We also conclude that the PSC is not required to impose interest on a refund it awards to an overcharged utility consumer. Finally, we hold that the PSC is required to impose a fine pursuant to MCL 460.558 only when a utility “wilfully or knowingly” neglects to comply with a PSC order. Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the PSC.
*32 FACTS AND PROCEDURAL HISTORY
Plaintiff, Great Wolf Lodge of Traverse City, LLC, owns a water-park resort on 48 acres near Traverse City. The resort sits on part of a 120-acre parcel once farmed by the Oleson family. On July 14, 2000, plaintiff entered into an option agreement to buy a portion of the property from GDO Investments (GDO), which acquired it after Mr. Oleson’s death.
Defendant Cherryland Electric Cooperative claims that it provided electricity to the Oleson property beginning in the 1940s. Cherryland ran an electric line, known as a “service drop,” to the property. At one time or another over the years, Cherryland, Consumers Energy Company, and Traverse City Light & Power (TCLP) serviced farm buildings on the property.
After the last farming tenant vacated the premises in September 2001, the electricity was turned off. However, according to a GDO employee, GDO continued to pay a minimum monthly bill from Cherryland so that it had the option to have the electricity turned back on.
Later, when plaintiff was planning new construction on the property, it solicited bids for electric service from Cherryland, Consumers Energy, and TCLP At that time, Cherryland did not claim that it had the sole right to provide electric service to the property. TCLP was the winning bidder, and in December 2001, plaintiff contracted with TCLP to provide electricity to its planned resort.
By January 2002, the farm buildings were scheduled to be demolished. GDO asked Cherryland to remove its service line so that the building it was attached to could be taken down. But Cherryland made it a condition for removing the service drop that it would be the electricity provider. Plaintiff claims that it agreed in order to *33 keep the project on schedule. Thus, plaintiff asserts, Cherryland coerced it to rescind its contract with TCLP and contract with Cherryland to avoid construction delays, loss of revenue, or litigation.[3]
In May 2002, plaintiff entered into a three-year contract for electrical service with Cherryland. Under the contract’s terms, Cherryland charged plaintiff $0.0496 a kilowatt-hour. This was the large resort service (LRS) rate set by the PSC. In February 2003, Cherryland applied to the PSC for formal approval to charge plaintiff the LRS rate.
This rate is available to consumers with a load factor greater than 50 percent and at least a 1500-kilowatt load. The application Cherryland signed recited these conditions. It also stated that, if plaintiff did not meet them, a different rate would apply. Shortly thereafter, in March 2003, plaintiff and Cherryland replaced their May 2002 contract with another that expressly provided for service at the LRS rate.
In July 2004, the PSC rejected Cherryland’s application. It expressed concern that plaintiff was the only customer that Cherryland charged the LRS rate and questioned whether plaintiffs electrical needs were typical for a large resort. The PSC directed Cherryland to apply instead for a “special contract” to serve plaintiff. It also concluded that Cherryland had violated MCL 460.552 by implementing the LRS rate without PSC approval and fined Cherryland $10,000 pursuant to MCL 460.558. However, the PSC approved the LRS rate “for up to one year or until a special contract is approved.”[4]
*34 Plaintiff and Cherryland attempted to negotiate a special contract but were unable to reach an agreement. In August 2004, Cherryland filed an application with the PSC for approval of a special contract with plaintiff. The contract had not yet been agreed to, but Cherry-land indicated that plaintiff was reviewing it. However, plaintiff intervened before the PSC and expressed concerns about the proposed special contract. According to plaintiff, it imposed unconscionable late charges and required plaintiff to forever bind itself to Cherryland. The PSC dismissed Cherryland’s application in October 2004, indicating that it could be refiled once the parties reached an agreement. It also indicated that the parties could petition the PSC to resolve any disputes to the extent that the PSC had jurisdiction to hear those disputes.
In November 2004, Cherryland began unilaterally charging plaintiff for electricity at the large commercial and industrial (LCI) rate. Cherryland claimed that it made the change because plaintiff almost never used enough electricity to satisfy the minimum requirements of the LRS rate. Therefore, Cherryland feared that the PSC would again fine it for charging an improper rate.
In July 2005, plaintiff filed a two-count complaint against Cherryland in the PSC. Count I alleged that Cherryland had violated MCL 460.552 and the PSC’s 2004 order by charging plaintiff the LCI rate rather than the LRS rate. Plaintiff sought a refund of the amounts that it had paid in excess of the LRS rate. Finally, plaintiff asked that the PSC fine Cherryland for violating its order and require Cherryland to stop charging plaintiff the LCI rate and return to the LRS rate. In count II, plaintiff asked the PSC to declare that plaintiff could receive all components of its electrical service from any provider of its choosing. Plaintiff also *35 asked the PSC to order Cherryland to transfer its distribution facilities to any new provider chosen by plaintiff and to remove any unnecessary facilities on its property.
Cherryland moved for summary disposition. A hearing referee ruled for plaintiff on count I and for Cherryland on count II. The referee concluded that Cherry-land’s conduct was a “purposeful and flagrant violation” of the PSC’s 2004 order. He determined that plaintiff was entitled to a refund of $72,550.16 plus interest and recommended that Cherryland be fined $44,250. Regarding count II, he agreed that plaintiff could choose its electric supplier, but added that no authority permitted plaintiff a full choice of providers for all components of its electric service.
The PSC agreed that plaintiff was entitled to summary disposition on count I and with the amount of the refund to which it was entitled. However, the PSC declined to impose a fine or interest on Cherryland. Although the PSC concluded that Cherryland “should have sought clarification” of its 2004 order, it stated that “Cherryland’s interpretation of the July 22 order was not so clearly unreasonable as to justify the imposition of a fine or interest on the refund to [plaintiff].”[5] Finally, the PSC agreed with the hearing referee that count II should be dismissed.
The circuit court affirmed the PSC’s order in large part. It concluded that plaintiff was an existing customer of Cherryland under Rule 411 because the property (the Oleson farm) was the customer, not the entity that owned the property. Therefore, Cherryland had the right to continue providing electric service to the prop *36 erty. However, the circuit court reversed the decision not to impose a fine and interest on Cherryland. It ruled that the language of the PSC’s 2004 order was clear and unambiguous and concluded, contrary to the PSC, that Cherryland’s misinterpretation of the order was clearly unreasonable.
Plaintiff and the PSC both appealed. The Court of Appeals consolidated the appeals and, in a published opinion, affirmed in part, reversed in part, and remanded to the PSC for further proceedings.[6] The Court of Appeals affirmed the circuit court’s ruling that the PSC was required to impose a fine and interest on Cherryland. However, the Court of Appeals concluded that plaintiff was free to choose its electric distributor if there was no customer governed by the restrictions of Rule 411. It held that the plain language of Rule 411(1)(a) defined “customer” as the “buildings and facilities served” by an electricity provider. The panel reasoned as follows:
If the changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site,... those changes and that interruption did not create a new customer. If, however, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customer or customers on the site, thus severing the utility-customer relationship.[7]
*37 The panel concluded that the record was insufficient to determine whether there was an existing customer and remanded the case to the PSC for further factual development, findings, and conclusions. It also directed the PSC to consider whether a “customer!]” was “already receiving service” pursuant to MCL 124.3 when plaintiff acquired the property. If so, MCL 124.3(2) would prohibit TCLR a municipal electricity provider not regulated by the PSC and not subject to Rule 411, from contracting with plaintiff to provide electric service.[8]
Cherryland and the PSC appealed in this Court. We granted the parties’ applications for leave to appeal.[9]
STANDARD OF REVIEW
A court reviewing an administrative agency’s interpretation of a statute should give the agency’s interpretation “respectful consideration” and, if it is persuasive, should not overrule it without “cogent reasons.”[10] We have held that “[i]n construing administrative rules, courts apply principles of statutory construction.”[11] All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasona *38 ble.[12] A final order of the PSC must be authorized by law and, if a hearing is required, supported by competent, material, and substantial evidence on the whole record.[13] A party aggrieved by a PSC order must show by clear and satisfactory evidence that the PSC’s order is unlawful or unreasonable.[14]
CHERRYLAND’S RIGHT OF FIRST ENTITLEMENT UNDER RULE 411(11)
The PSC adopted Rule 411 in 1982 as part of a comprehensive regulatory scheme for electric utilities. At that time, it stated that the purpose of Rule 411 was “to avoid unnecessary and costly duplication of facilities and to provide objective standards for extension of electric service . . . .”[15]
The PSC argues that its decisions interpreting Rule 411 clearly establish that “once a first utility entitlement is established, a subsequent change in ownership does not create a new prospective customer on the old premises.”[16] In effect, the PSC’s interpretation of Rule 411(11) gives the first-serving utility a right in perpetuity to serve the property on which a customer is located.
Rule 411(11) provides that “[t]he first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer *39 even if another utility is closer to a portion of the customer’s load.”[17] Rule 411(l)(a) defines “customer” as “the buildings and facilities served rather than the individual, association, partnership, or corporation served.”[18] Rule 102(f) defines “premises” as “an undivided piece of land which is not separated by public roads, streets, or alleys.”[19]
When those definitions are incorporated into Rule 411(11), it reads as follows:
The first utility serving [buildings and facilities] pursuant to these rules is entitled to serve the entire electric load on the [undivided piece of land which is not separated by public roads, streets, or alleys] of [those buildings and facilities] even if another utility is closer to a portion of the [buildings and facilities’] load.
Thus, Rule 411(11) grants the utility first serving buildings or facilities on an undivided piece of real property the right to serve the entire electric load on that property. The right attaches at the moment the first utility serves “a customer” and applies to the entire “premises” on which those buildings and facilities sit. The later destruction of all buildings on the property or division of the property by a public road, street, or alley does not extinguish or otherwise limit the right. This conclusion is consistent with the rule’s purpose of avoiding unnecessary duplication of electrical facilities.[20]
*40 Plaintiff argues that this right of first entitlement lasts only as long as an “existing customer” is being served. We disagree. If Rule 411(11) were intended to be read as plaintiff argues, it could simply have stated that “[t]he first utility serving a customer pursuant to these rules is entitled to serve the entire electric load of that customer.” However, Rule 411(11) explicitly ties the right of entitlement to the premises, not to the customer. Notably, nothing in Rule 411 or elsewhere in the PSC rules indicates that this right of first entitlement terminates if the initial customer, the initial “buildings and facilities served,” changes.[21]
For this reason, contrary to the dissent’s contention, our reading of the rule does not redefine “customer” as “premises.” Both this opinion and the dissent give the same effect to the word “customer” in Rule 411(11). We agree that to trigger the right of first entitlement, there must first be a “customer” served by the utility. We further agree that the “premises of that customer” dictate the scope of the utility’s right.[22]
*41 Plaintiff argues that Rule 411(2) undercuts our interpretation because it refers to “existing customers.” However, Rule 411(2) states simply that “[existing customers shall not transfer from one utility to another.”[23] Hence, it establishes nothing more than that existing “buildings and facilities” cannot transfer from one utility to another. It does not advance plaintiffs argument that eliminating a customer cuts off the right in Rule 411(11) to serve the “entire electric load on the premises” of the initial customer.
In this case, is it undisputed that Cherryland was the first utility to provide electric service to buildings and facilities on the Oleson farm. Once Cherryland did so, Rule 411(11) gave it the right to serve the entire electric load on the premises. That right was unaffected by subsequent changes in the “customer,” because the right extends to the “premises” of the “buildings and facilities” that existed at the time service was established. Later destruction of the buildings and facilities on the property did not extinguish that right.[24]
Given that Cherryland is entitled to the benefit of the first entitlement in Rule 411(11), it is irrelevant that TCLP is a municipal corporation not subject to PSC regulation. Rule 411(11) both grants and limits rights. It grants a right of first entitlement to Cherryland while *42 limiting the right of the owner of the premises to contract with another provider for electric service. Plaintiff put that limitation directly at issue by seeking a declaratory ruling that it is free to contract for electric service with any electricity provider. Assuming arguendo that MCL 124.3 does not restrict TCLP from contracting with plaintiff to provide electric service, Rule 411(11) restricts plaintiff from seeking that service from any entity other than Cherryland. Plaintiff may not circumvent the limitation of Rule 411(11) by attempting to receive service from a municipal corporation not subject to PSC regulation. Thus, MCL 124.3 has no application to the instant dispute.
In sum, the PSC’s determination that Cherryland had the right to serve the entire premises was authorized by law and supported by competent, material, and substantial evidence. Plaintiff has failed to demonstrate that the PSC’s May 2006 order was unlawful or unreasonable.
THE PSC IS NOT REQUIRED TO IMPOSE INTEREST ON A REFUND
The PSC’s authority to award interest in addition to a refund under these circumstances is not explicitly authorized by statute. Rather, it has its genesis in the Court of Appeals’ decision in Detroit Edison Co v Pub Serv Comm.[25] In that case, the Court of Appeals held that the PSC’s authority to award interest derives from MCL 460.6(1). MCL 460.6(1) vests the PSC with the power and jurisdiction, among other things, to “regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of public utilities.” *43 Because “[t]he selected rate of interest has a direct impact on the fees and charges that a utility’s customers ultimately pay for service,”[26] the Court of Appeals concluded that the PSC had authority to determine the amount of interest to award.
However, plaintiff has cited no authority for the proposition that the PSC must award interest when it grants a refund in these circumstances.[27] Rather, Detroit Edison makes clear that the PSC has broad discretion when determining the amount of interest to award.[28] Therefore, plaintiff cannot demonstrate that the PSC’s decision not to impose interest on the refund in this case was unlawful.
Nor has plaintiff demonstrated that the PSC’s failure to award interest was “unreasonable.” We have defined “unreasonable” as “arbitrary, capricious or totally unsupported by admissible and admitted evidence.”[29] The PSC declined to impose interest on the refund to plaintiff because it concluded that Cherryland reasonably misconstrued its July 2004 order. This conclusion was not arbitrary or capricious because evidence on the *44 record supported the PSC’s conclusion that Cherry-land’s interpretation of the order was not clearly unreasonable.
Cherryland’s application for approval of the LRS rate noted that the rate is available only to customers with a load factor greater than 50 percent and at least a 1500-kilowatt load. Plaintiff met these requirements only in August 2003 and July 2005. Moreover, the PSC had previously fined Cherryland for charging plaintiff an unapproved rate. Taken together, this evidence supported the PSC’s determination. It was not clearly unreasonable for Cherryland to change the rate charged to plaintiff because plaintiff had not complied with the load requirements for the LRS rate.
MCL 460.558 REQUIRES THAT A FINE BE IMPOSED WHEN A UTILITY FAILS OR NEGLECTS TO COMPLY “WILFULLY OR KNOWINGLY”
MCL 460.558 states:
Every corporation, its officers, agents and employes, and all persons and firms engaged in the business of furnishing electricity as aforesaid shall obey and comply with every lawful order made by the commission under the authority of this act so long as the same shall remain in force. Any corporation or person engaged in such business or any officer, agent, or employe thereof, who wilfully or knowingly fails or neglects to obey or comply with such order or any provision of this act shall forfeit to the state of Michigan not to exceed the sum of 300 dollars for each offense. Every distinct violation of any such order or of this act, shall be a separate offense, and in case of a continued violation, each day shall be deemed a separate offense. An action to recover such forfeiture may be brought in any court of competent jurisdiction in this state in the name of the people of the state of Michigan, and all moneys recovered in any such action, *45 together with the costs thereof, shall be paid into the state treasury to the credit of the general fund.[30]
The Court of Appeals reasoned that MCL 460.558 does not apply solely in cases of “wilful or knowing failure to comply with a lawful PSC order; it also applies in the event of negligent noncompliance.”[31] We disagree. Under the Court of Appeals’ construction, MCL 460.558 would require that a fine be imposed any time a utility or its agent fails to comply with a PSC order. If that construction were what the Legislature intended in enacting MCL 460.558, there would have been no need to include the modifiers “wilfully or knowingly.” Rather, the Legislature could simply have mandated a fine in cases in which a party “fails or neglects” to obey a PSC order.
“Wilfully” and “knowingly” are adverbs, which generally modify verbs. The most natural reading of MCL 460.558 is that these terms are intended to modify both verbs immediately following them and separated by the disjunctive “or.”[32]
The record here indicates that the PSC determined that Cherryland made a mistake by unilaterally imposing the LCI rate. The PSC concluded that Cherryland should instead have sought clarification of its July 2004 order. It was not unlawful or unreasonable to conclude that Cherryland did not 'willfully or knowingly fail or willfully or knowingly neglect to obey or comply with the PSC’s July 2004 order. Hence, MCL 460.558 did not require the PSC to impose a fine on Cherryland.
*46 CONCLUSION
We hold that a utility’s right of first entitlement under Mich Admin Code, R 460.3411(11) entails the right to serve the entire premises. That right is not extinguished when there is a new customer, i.e., new “buildings and facilities served,” on the premises. We also hold that, absent a statutory mandate to do so, the PSC need not impose interest when it awards a refund to a party. Finally, we hold that the PSC is required to impose a fine pursuant to MCL 460.558 only when a utility willfully or knowingly neglects to comply with its order. Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the PSC.
Young, C. J., and Cavanagh and Mary Beth Kelly, JJ., concurred with Marilyn Kelly, J.

 Mich Admin Code, R 460.3411(11).

 MCL 460.558.

 TCLP later sued Cherryland for tortious interference with a contract and recovered $275,000. Plaintiff was not a party to that litigation.

 In re Application of Cherryland Electric Coop, order of the Public Service Commission, entered July 22, 2004 (Case No. U-13716), p 8.

 In re Complaint of Great Wolf Lodge of Traverse City, LLC, Against Cherryland Electric Coop, order of the Public Service Commission, entered May 25, 2006 (Case No. U-14593), p 15.

 Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm, 285 Mich App 26; 775 NW2d 597 (2009).

 Id. at 40.

 MCL 124.3(2) provides that “[a] municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing.”

 Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm, 486 Mich 869 (2010).

 In re Complaint of Rovas Against SBC Mich, 482 Mich 90, 108; 754 NW2d 259 (2008).

 Detroit Base Coalition for Human Rights of the Handicapped v Dep’t of Social Servs, 431 Mich 172, 185; 428 NW2d 335 (1988), citing Gen Motors Corp v Bureau of Safety & Regulation, 133 Mich App 284; 349 NW2d 157 (1984).

 MCL 462.25; see also Mich Consol Gas Co v Pub Serv Comm, 389 Mich 624, 635-636; 209 NW2d 210 (1973).

 Const 1963, art 6, § 28.

 MCL 462.26(8).

 In re Regulations Governing Service Supplied by Electric Utilities, order of the Public Service Commission, entered July 13, 1982 (Case No. U-6400), p 10.

 In re Complaint of Indiana Mich Power Co Against Midwest Energy Co, order of the Public Service Commission, entered June 7, 2005 (Case No. U-14193), p 19.

 Mich Admin Code, R 460.3411(11).

 Mich Admin Code, R 460.3411(1)(a).

 Mich Admin Code, R 460.3102(f).

 The dissent’s citation of Rule 411(14) does not aid its argument. First, the purpose behind Rule 411(11) does not “influence [our] interpretation” of the rule. Post at 56 n 2. We simply observe that our interpretation of the rule’s language is also consistent with that purpose. Rule 411(14) does nothing to undercut our interpretation.
*40 Second, Rule 411(14) is an irrelevant distraction from the issue presented in this case. Both this opinion and the dissent decide this case on the basis of our interpretation of the language in Rule 411(11). The dissent does not even attempt to argue that Rule 411(14) provides any additional support for its interpretation.

 Thus, the dissent’s statement that “if there are no buildings or facilities being served, there is no ‘customer,’ ” post at 53, is correct, but irrelevant.

 Our disagreement with the dissent appears when the scope of this right is fully defined. The dissent does not view the parameters of the right of first entitlement in Rule 411(11) as firmly established when the utility first serves a customer. Instead, it is an undefined right that a property owner is free to vitiate at any time by tearing down all of the “customers” on the property. Similarly, a later-constructed road dividing the property in two would create a new “premises,” hence a new “customer,” if there were no buildings being served on the newly defined “premises.” This approach leaves the utility’s right of first entitlement *41 undefined, wholly outside the control of the utility and the PSC, and subject to unilateral abrogation by property owners. This result would be contrary to the purpose of keeping “[t]he electric transmission and distribution businesses . . . under a regulated monopoly utility structure.” See Public Service Commission, The Commission had its historic beginnings over 130 years ago <http://www.michigan.gov/mpsc/ 0,1607,7-159-16400-40512-,00.html> (accessed May 9, 2011) (describing the history of the PSC).

 Mich Admin Code, R 460.3411(2).

 We note that a utility may waive this right “if another utility is willing and able to provide the required service and if the [PSC] is notified and has no objections.” Mich Admin Code, R 460.3411(12).

 Detroit Edison Co v Pub Serv Comm, 155 Mich App 461; 400 NW2d 644 (1986).

 Id. at 469.

 Significantly, the Legislature has made interest awards mandatory under other circumstances involving the PSC. See, e.g., MCL 460.6j(16) (stating that if the PSC orders “refunds or credits” to customers in orders involving “a power supply cost reconciliation,” the refunds, credits, or additional charges “shall include interest”) (emphasis added).

 Detroit Edison, 155 Mich App at 470-471 (“[T]here is no reason why the interest element of the guarantee needs or ought to he determined by the circuit court as part of its equitable powers. The circuit court’s equitable powers arise from situations where there is probable cause to believe that a party is threatened with irreparable injury. ... The method of establishing an interest rate simply does not present a situation of a comparable nature. Moreover, this complex subject is one in which the Commission has superior expertise.”).

 Associated Truck Lines, Inc v Pub Serv Comm, 377 Mich 259, 279; 140 NW2d 515 (1966).

 Emphasis added.

 Great Wolf Lodge, 285 Mich App at 47.

 See generally Porto Rico Railway, Light & Power Co v Mor, 253 US 345, 348; 40 S Ct 516; 64 L Ed 944 (1920) (“When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.”).