# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

CITY OF COLDWATER v CONSUMERS ENERGY COMPANY
CITY OF HOLLAND v CONSUMERS ENERGY COMPANY

Docket Nos. 151051 and 151053. Argued on application for leave to appeal October 5, 2016. Decided May 18, 2017.

In Docket No. 151051, the city of Coldwater filed a complaint for declaratory relief in the Branch Circuit Court, seeking a determination that the Coldwater Board of Public Utilities (CBPU), a department of the city of Coldwater that operates a municipal electric utility, could provide power to a parcel of property within Coldwater Township that CBPU had purchased on July 21, 2011. Both CBPU and Consumers Energy Company were franchised to provide electric service within the township. At the time of the purchase, a vacant building on the property had an electric service drop that was connected to an electric meter owned by Consumers, but Consumers' service had been terminated 20 days before the purchase. Despite its objection to CBPU providing electric service for the parcel on the basis of Rule 460.3411 (Rule 411) of the Michigan Administrative Code and the Supreme Court's decision in *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27 (2011), Consumers removed its electric facilities from the property. Both parties moved for summary disposition, and the court, Patrick W. O'Grady, J., granted summary disposition in favor of Coldwater, finding that neither Rule 411 nor MCL 124.3 was applicable. Consumers appealed in the Court of Appeals.

In Docket No. 151053, the city of Holland filed a complaint for declaratory relief in the Ottawa Circuit Court, seeking a determination that the Holland Board of Public Works (HBPW), a department of the city of Holland that operates a municipal electric utility, could provide power to a parcel of property within Park Township that had been acquired by Benjamin's Hope, a nonprofit charitable corporation. Nine days after the complaint was filed, Consumers requested a declaratory ruling from the Michigan Public Service Commission (PSC) that Rule 411 gave Consumers the exclusive right to serve the property, and the court held Holland's action in abeyance pending the outcome of the PSC proceeding. Similar to the case in Docket No. 151051, both CBPU and Consumers were franchised to provide electric service within the township. At the time of the purchase, the land was vacant, and no electric service was being provided on the land. Consumers had previously supplied power to the parcel, but its lines had been de-energized in 2008. In August 2011, CL Construction, the contractor for Benjamin's Hope, requested that Consumers provide single-phase electric service to a construction trailer that was temporarily located on the property. In October 2011, Benjamin's Hope solicited bids from Consumers and HBPW for three-phase electric service and selected HBPW as its electric provider. Although Consumers initially refused to remove its electric facilities, it eventually did

so sometime before April 24, 2012, when CL Construction removed its trailer from the property. HBPW then began providing electric service to the parcel on April 30, 2012. On December 6, 2012, the PSC declined Consumers' request for a declaratory ruling on the ground that it had no jurisdiction over HBPW or Benjamin's Hope. The circuit court, Edward R. Post, J., thereafter ruled that Rule 411 was not applicable and that MCL 124.3 did not preclude HBPW from providing electric service. Consumers appealed, and the Court of Appeals consolidated Consumers' appeals in both the *City of Coldwater* and *City of Holland* cases. The Court of Appeals affirmed both decisions. 308 Mich App 675 (2015). Consumers sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 498 Mich 891 (2015).

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court *held*:

Rule 411 of the Michigan Administrative Code is inapplicable when a municipal utility is involved, and *Great Wolf Lodge* was overruled to the extent it stated that Rule 411 applied to municipally owned utilities. In MCL 124.3(2), the word "customer" is defined as an entity that receives electric service, and the phrase "already receiving" means that service needs to continue into the present in order for MCL 124.3(2) to apply. In these consolidated cases, Rule 411 was inapplicable because the cases involved municipally owned utilities, and MCL 124.3(2) did not prevent either property owner from switching electric providers because Consumers had discontinued service before the provision of service by a municipally owned utility.

1. Rule 411 of the Michigan Administrative Code, sometimes referred to as a utility's right to first entitlement, provides that the first utility serving a customer, which is defined as the buildings and facilities served rather than the individual, association, partnership, or corporation served, is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load. MCL 460.6(1) provides, in relevant part, that the PSC is vested with complete power and jurisdiction to regulate all public utilities in the state *except a municipally owned utility*, the owner of a renewable resource power production facility as provided in MCL 460.6d, and except as otherwise restricted by law. PSC Rule 460.3102(*l*) (Rule 102(*l*)) defines "utility" as an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the commission. Under the plain language of MCL 460.6(1), the PSC is explicitly granted complete power and jurisdiction over public utilities that are not municipally owned utilities. The definition of "utility" in Rule 102(*l*) notably does not include municipally owned utilities; therefore, Rule 102(*l*) does not apply to municipal electric utilities because any other interpretation would render Rule 102(*l*) nugatory. In these cases, because the municipal electric utilities did not otherwise elect to operate in compliance with the rule, MCL 460.10y(3), Rule 411(11) was inapplicable.

2. In *Great Wolf Lodge*, 489 Mich at 41-42, the Supreme Court primarily held that a utility's right of first entitlement set forth in Rule 411 extended to the entire premises initially served, but the Court also addressed the applicability of Rule 411 to a dispute over whether a PSC-regulated utility and a municipal utility could provide electric service to the plaintiff's property. To the extent that *Great Wolf Lodge* could be read to hold that Rule 411 is applicable in cases involving disputes between PSC-regulated utilities and municipal utilities over which entity can provide electric service, *Great Wolf Lodge* was wrongly decided because it conflicts

with the plain language of MCL 460.6(1). That a case was wrongly decided, by itself, does not necessarily mean that overruling it is appropriate. Courts should review whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision. *Great Wolf Lodge* defies practical workability because a holding that would purport to exercise PSC jurisdiction when there is none leaves municipally owned utilities in the dark as to when and how their status as non-PSC regulated utilities is legally significant. *Great Wolf Lodge* is also unsound in principle to the extent that it found this lack of jurisdiction irrelevant. Reliance interests weighed in favor of overruling this portion of *Great Wolf Lodge* because the case was decided only six years ago, meaning that any reliance on its holding has been relatively brief, and because *Great Wolf Lodge* did not consider either MCL 460.6(1) or PSC Rule 102(*l*) in finding that Rule 411(11) may apply to municipally owned utilities. Finally, there was no substantive change in the law or the underlying facts. A reading of MCL 460.6(1) and PSC Rule 102(*l*) compelled the decision to overrule the portion of *Great Wolf Lodge* providing that Rule 411(11) applied to municipally owned utilities.

3. MCL 124.3(2) provides that a municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing. MCL 124.3(3)(a) further provides that "electric delivery service" has the same meaning as "delivery service" under MCL 460.10y. MCL 460.10y(2) provides that, except with the written consent of the municipally owned utility, a person shall not provide delivery service or customer account service to a retail customer that was receiving that service from a municipally owned utility as of June 5, 2000, or is receiving the service from a municipally owned utility. Additionally, MCL 460.10y(2) provides that, *for purposes of this subsection*, "customer" means the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or any other entity taking service. In these cases, determination of whether MCL 124.3(2) applied depended on the meaning of two phrases in the statute: "customers" and "already receiving." The Court of Appeals inappropriately relied on the definition of customer in MCL 460.10y(2) because the language "[f]or purposes of this subsection" in MCL 460.10y(2) explicitly confined that definition to MCL 460.10y(2). Additionally, MCL 124.3(3)(a) directs the reader to MCL 460.10y for a definition of "electric delivery service," and had the Legislature intended to do the same for the word "customer" as it is used in MCL 124.3(2), it could have done so, but it did not. A plain-language definition of "customer" is "one that purchases a commodity or service." Therefore, as used in MCL 124.3(2), "customer" refers to the entity that receives electric service and not the building or facilities on the land. In MCL 124.3(2), the present participle "receiving" is modified by "already." Although "already" can suggest a prior point in time, when read together, the phrase "already receiving" refers to an action that started in the past and continues into the present. Therefore, the phrase "already receiving" in MCL 124.3(2) means that service needs to continue into the present in order for MCL 124.3(2) to apply.

4. MCL 124.3(2) did not prevent either property owner from switching electric providers because Consumers had discontinued service before the provision of service by a municipally owned utility. In the case of Coldwater, CBPU was never a customer of Consumers and was not already receiving service from Consumers; it never received service from Consumers. In the

case of Holland, it was CL Construction that had received service from Consumers, and because CL Construction was a different entity from Benjamin's Hope, Benjamin's Hope was never a customer of Consumers. Additionally, Benjamin's Hope was not "already receiving" service from Consumers because there was no electric service being provided on the land at that time; service had been discontinued in 2008. The existence of a break in service between when Consumers removed its electric facilities and when HBPW began providing service indicated that Benjamin's Hope was not "already receiving" service; at most, it would have "received" service, which was insufficient for the purpose of MCL 124.3(2).

Affirmed.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED May 18, 2017

S T A T E  O F  M I C H I G A N

SUPREME COURT

CITY OF COLDWATER,

       Plaintiff-Appellee,

v                                   No. 151051

CONSUMERS ENERGY COMPANY,

       Defendant-Appellant.

---

CITY OF HOLLAND,

       Plaintiff-Appellee,

v                                   No. 151053

CONSUMERS ENERGY COMPANY,

       Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In these consolidated cases, two municipalities seek to provide electric service through municipal electric utilities. This case requires us to resolve two issues. First, whether a utility's right of first entitlement to provide electric service is applicable when a municipal utility is involved. Mich Admin Code, R 460.3411(11). Second, whether in these cases a "customer[]" was "already receiving . . . service from another utility" so as to prevent a municipal utility from providing service under MCL 124.3(2).

We hold that Rule 460.3411 (Rule 411) of the Michigan Administrative Code is inapplicable when a municipal utility is involved and has not consented to the jurisdiction of the Michigan Public Service Commission (PSC). Additionally, under the circumstances of each case, we find that there was not a customer already receiving service from another utility; accordingly, MCL 124.3 does not prevent either plaintiff from providing electric service. Therefore, we affirm the judgment of the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

The first of these consolidated cases involves the Coldwater Board of Public Utilities (CBPU), a department of plaintiff City of Coldwater (Coldwater) that operates a municipal electric utility. CBPU holds a franchise to provide electric power to Coldwater Township and provides electric service to customers throughout the township. Defendant Consumers Electric Company (Consumers) is also franchised to provide electric service within the township.

On July 21, 2011, CBPU purchased a parcel of property within the township. At the time of the purchase, the only structure on the property was a vacant building with an

2

electric service drop that was connected to an electric meter owned by Consumers. Service had been discontinued before CBPU purchased the property; specifically, records indicate that Consumers received a request from the previous owner to turn off electricity before Coldwater purchased the parcel, and service was terminated on July 1, 2011—20 days before the purchase. Coldwater wrote to Consumers, asking whether Consumers would object to CBPU providing electric service to the parcel. Consumers objected on the basis of Rule 411 of the Michigan Administrative Code and this Court's decision in *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27; 799 NW2d 155 (2011). Despite this objection, Consumers removed its electric facilities from the property so that the preexisting building could be demolished.

On April 2, 2013, Coldwater filed a complaint for declaratory relief in circuit court, seeking a determination that CBPU could provide power to the parcel. Both parties moved for summary disposition. On January 15, 2014, the circuit court granted summary disposition to Coldwater, finding that neither Rule 411 nor MCL 124.3 was applicable.

The second of these consolidated cases involves the Holland Board of Public Works (HBPW), a department of plaintiff City of Holland (Holland) that operates a municipal electric utility. HBPW holds a franchise from Park Township that requires it to provide electric service to any prospective customer in the township who requests it. Consumers is also franchised to provide electric service within the township.

In March 2011, Benjamin's Hope, a nonprofit charitable corporation, acquired a parcel of property within the township. At the time of purchase, the land was vacant because all of the buildings had been demolished by the previous owner. There was no

3

electric service being provided on the land.  Although Consumers had previously supplied power to the parcel, its lines were de-energized in 2008.  Benjamin's Hope sought to build a multiunit facility on the property.  In August 2011, the contractor for this construction project, CL Construction, requested that Consumers provide single-phase electric service to a construction trailer that was temporarily located on the property.[1]

In October 2011, Benjamin's Hope solicited bids from Consumers and HBPW for three-phase electric service, which comes at a different voltage than the single-phase electric service that had been provided to CL Construction's trailer.  Benjamin's Hope selected HBPW as its electric provider.  When CL Construction removed its trailer from the property, CL Construction requested that Consumers remove its electric facilities as well.  Although Consumers initially refused, it eventually complied by removing the line and meter sometime before April 24, 2012.  HBPW began providing electric service to the parcel on April 30, 2012.

On March 20, 2012, Holland filed a complaint for declaratory relief in circuit court, seeking a determination that HBPW could provide power to the Benjamin's Hope parcel.  On March 29, 2012, Consumers filed a request for a declaratory ruling from the PSC, claiming that Rule 411 gave it the exclusive right to serve the property.  The PSC convened a proceeding and assigned a hearing officer.  The circuit court held Holland's action in abeyance pending the outcome of the PSC proceeding.

---

[1] CL Construction directed Consumers to bill Benjamin's Hope for this temporary electric service.  There is no indication in the record as to who paid these bills.

4

On December 6, 2012, the PSC issued an order declining Consumers' request on the ground that it had no jurisdiction over HBPW or Benjamin's Hope. The circuit court ruled that Rule 411 was not applicable and that MCL 124.3 did not preclude HBPW from providing electric service.

Consumers appealed each of these cases in the Court of Appeals, and the appeals were consolidated. On January 6, 2015, the Court of Appeals affirmed both of the circuit courts' decisions in a published opinion, holding that Rule 411 was not applicable in either case and that MCL 124.3 did not prevent either property owner from switching electrical providers. *City of Holland v Consumers Energy Co*, 308 Mich App 675, 687, 689, 698; 866 NW2d 871 (2015).

## II. STANDARD OF REVIEW

This case concerns the interpretation of both administrative rules and statutes. "In construing administrative rules, courts apply principles of statutory construction." *Detroit Base Coalition for Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 185; 428 NW2d 335 (1988). Statutory interpretation is a question of law that this Court reviews de novo. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). "The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). We begin by examining the language of the statute, which provides " 'the most reliable evidence of its intent[.]' " *Id*., quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

> If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as

5

written. No further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [*Sun Valley Foods Co*, 460 Mich at 236 (citations omitted).]

See also *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003) ("If the language of the statute is clear, no further analysis is necessary or allowed."). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

## III. ANALYSIS

### A. RULE 411

We first consider whether a public utility has a right of first entitlement under Rule 411, even when the competing utility is a municipal utility. Rule 411 provides, in relevant part:

(1) As used in this rule:

(a) "Customer" means the buildings and facilities served rather than the individual, association, partnership, or corporation served.

* * *

(11) The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load. [Mich Admin Code, R 460.3411.]

This rule is sometimes referred to as a utility's right of first entitlement.

We previously considered the applicability of a utility's right of first entitlement in *Great Wolf Lodge*, 489 Mich 27. In *Great Wolf Lodge*, the plaintiff purchased a parcel of property. Although electric service had been turned off, the prior owner had continued to

6

make a minimum monthly payment to Cherryland Electric Cooperative (Cherryland) to maintain the option to have service turned on in the future. The plaintiff planned new construction on the property and solicited bids from electric utilities. A municipal electric utility was the winning bidder. However, when Cherryland was asked to remove its service line so that a building could be demolished, it conditioned removal on being named the electricity provider. This Court held:

> Rule 411(11) grants the utility first serving buildings or facilities on an undivided piece of real property the right to serve the entire electric load on that property. The right attaches at the moment the first utility serves "a customer" and applies to the entire "premises" on which those buildings and facilities sit. The later destruction of all buildings on the property or division of the property by a public road, street, or alley does not extinguish or otherwise limit the right. This conclusion is consistent with the rule's purpose of avoiding unnecessary duplication of electrical facilities. [*Id*. at 39.]

This Court noted that it was undisputed that Cherryland was the first utility to provide electric service to buildings on the property. Rule 411(11) therefore gave Cherryland the right to first entitlement. "That right was unaffected by subsequent changes in the 'customer,' because the right extends to the 'premises' of the 'buildings and facilities' that existed at the time service was established. Later destruction of the buildings and facilities on the property did not extinguish that right." *Id*. at 41.

This Court found it "irrelevant" that the winning bidder was a municipal electric utility that was not subject to PSC regulation. *Id*.

> Rule 411(11) both grants and limits rights. It grants a right of first entitlement to Cherryland while limiting the right of the owner of the premises to contract with another provider for electric service. Plaintiff put that limitation directly at issue by seeking a declaratory ruling that it is free to contract for electric service with any electricity provider. Assuming arguendo that MCL 124.3 does not restrict [the municipal electric utility]

7

from contracting with plaintiff to provide electric service, Rule 411(11) restricts plaintiff from seeking that service from any entity other than Cherryland. Plaintiff may not circumvent the limitation of Rule 411(11) by attempting to receive service from a municipal corporation not subject to PSC regulation. Thus, MCL 124.3 has no application to the instant dispute. [*Id*. at 41-42.]

Leaving aside, for now, the potential application of MCL 124.3, we turn to the language in *Great Wolf Lodge* concerning the jurisdiction of the PSC. The *Great Wolf Lodge* Court noted that a municipal corporation is not subject to PSC regulation. *Id*. at 42. This is correct. MCL 460.6(1) states, "The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state *except a municipally owned utility*, the owner of a renewable resource power production facility as provided in [MCL 460.6d], and except as otherwise restricted by law." (Emphasis added.) Under the plain language of MCL 460.6(1), the PSC is explicitly granted complete power and jurisdiction over public utilities that are not municipally owned utilities.

Furthermore, PSC Rule 102(*l*) defines "utility" as "an electric company, whether private, corporate, or cooperative, that operates under the jurisdiction of the commission." Mich Admin Code, R 460.3102(*l*). This definition notably does not include municipally owned utilities. The application of the canon of statutory interpretation *expressio unius est exclusio alterius*[2] directs us to read this absence as

---

[2] "[T]he doctrine of *expressio unius est exclusio alterius* . . . provides that 'the express mention in a statute of one thing implies the exclusion of other similar things.' " *People v Feeley*, 499 Mich 429, 438-439; 885 NW2d 223 (2016), quoting *People v Jahner*, 433 Mich 490, 500 n 3; 446 NW2d 151 (1989).

meaningful, especially in light of the lack of any language that would suggest that this was intended to be an illustrative, rather than an exclusionary, list.[3]  Given that Rule 411(11) makes no specific reference to municipal electric utilities and speaks only to a "utility," a plain-language reading of that rule leads to the inevitable conclusion that it does not apply to municipal electric utilities.  Any other interpretation would render Rule 102(*l*) nugatory.

*Great Wolf Lodge* originated as a rate dispute between a landowner and a PSC-regulated utility that was indisputably subject to the PSC's jurisdiction.  The primary holding of that case was that "a utility's right of first entitlement set forth in Rule 460.3411 (Rule 411) of the Michigan Administrative Code extends to the entire premises initially served."  *Great Wolf Lodge*, 489 Mich at 31.  Yet after interpreting the language of Rule 411, the Court also proceeded to address its applicability to a dispute over whether a PSC-regulated utility and a municipal utility could provide electric service to the plaintiff's property.  Although the Court's analysis of that issue was binding as to the parties in that case, it was not the focus of the Court's opinion.[4]

To the extent that *Great Wolf Lodge* can be read to hold that Rule 411 is applicable in cases involving disputes between PSC-regulated utilities and municipal utilities over which entity can provide electric service, it was wrongly decided because it

---

[3] For example, "use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."  *Samantar v Yousuf*, 560 US 305, 317; 130 S Ct 2278; 176 L Ed 2d 1047 (2010).

[4] Notably, no party to *Great Wolf Lodge* was a municipal utility.

9

conflicts with the plain language of MCL 460.6(1).[5] *Id.* at 41-42.[6] We further conclude

that it is at best an incomplete analysis of the issue. See, e.g., *People v McKinley*, 496

Mich 410, 422; 852 NW2d 770 (2014) (in considering whether to overrule our prior

decision, noting that the analysis in that prior decision was "incomplete").

That a case was wrongly decided, by itself, does not necessarily mean that

overruling it is appropriate. *Robinson v Detroit*, 462 Mich 439, 465; 613 NW2d 307

(2000). Generally, in order to "avoid an arbitrary discretion in the courts, it is

indispensable that [courts] should be bound down by strict rules and precedents which

---

[5] Rule 411 may be applicable in cases in which a municipal electric utility either subjects itself to PSC jurisdiction or elects to operate in compliance with the rule. MCL 460.10y(3) ("With respect to any electric utility regarding delivery service to customers located outside of the municipal boundaries of the municipality that owns the utility, a governing body of a municipally owned utility may elect to operate in compliance with [Rule 411] of the Michigan administrative code . . . .").

[6] Specifically, we disavow the following reasoning from *Great Wolf Lodge*:

> Given that Cherryland is entitled to the benefit of the first entitlement in Rule 411(11), it is irrelevant that [Traverse City Light & Power (TCLP)] is a municipal corporation not subject to PSC regulation. Rule 411(11) both grants and limits rights. It grants a right of first entitlement to Cherryland while limiting the right of the owner of the premises to contract with another provider for electric service. Plaintiff put that limitation directly at issue by seeking a declaratory ruling that it is free to contract for electric service with any electricity provider. Assuming arguendo that MCL 124.3 does not restrict TCLP from contracting with plaintiff to provide electric service, Rule 411(11) restricts plaintiff from seeking that service from any entity other than Cherryland. Plaintiff may not circumvent the limitation of Rule 411(11) by attempting to receive service from a municipal corporation not subject to PSC regulation. Thus, MCL 124.3 has no application to the instant dispute. [*Great Wolf Lodge*, 489 Mich at 41-42.]

serve to define and point out their duty in every particular case that comes before them[.]" The Federalist No. 78 (Hamilton) (Rossiter ed, 1961), p 471. Indeed, under the doctrine of stare decisis, "principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *Brown v Manistee Co Rd Comm*, 452 Mich 354, 365; 550 NW2d 215 (1996), overruled on other grounds by *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197 (2007) (citation and quotation marks omitted). "However, stare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions determining the meaning of statutes." *Robinson*, 462 Mich at 463. Instead, courts should review whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision. *Id*. at 464.

First, we consider whether *Great Wolf Lodge* defies practical workability. *Great Wolf Lodge* held that a PSC rule may be applied to entities over which the PSC itself is not vested with jurisdiction by statute. *Great Wolf Lodge*, 489 Mich at 41-42. A holding that would purport to exercise PSC jurisdiction when there is none inherently defies practical workability because it leaves municipally owned utilities in the dark as to when and how their status as non-PSC regulated utilities is legally significant. To the extent that *Great Wolf Lodge* found this lack of jurisdiction irrelevant, this holding is also unsound in principle.

Second, we consider whether reliance interests weigh in favor of overruling this portion of *Great Wolf Lodge*. They do. "[T]he Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's

11

expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson*, 462 Mich at 466. *Great Wolf Lodge* was decided only six years ago, and any reliance on its holding has thus been relatively brief. It has never been cited by us or the Court of Appeals for the point of law on which we overrule it, and the PSC has cited it only in its opinion in the *City of Holland* case in which it correctly determined that it lacked jurisdiction over HBPW. Furthermore, when discussing reliance, "it is to the words of the statute itself" that the public first looks for guidance, and these words must be at the center of our analysis. *Id*. at 467. *Great Wolf Lodge* did not consider either MCL 460.6(1) or PSC Rule 102(*l*) in finding that Rule 411(11) may apply to municipally owned utilities. Because MCL 460.6(1) states that the PSC has no jurisdiction over municipally owned utilities, and because PSC Rule 102(*l*) does not include a municipally owned utility within its definition of the word "utility," we find that "it is that court itself that has disrupted the reliance interest." *Id*.

Lastly, we consider whether changes in the law or facts no longer justify the decision. There has been no substantive change in the law or our underlying factual assumptions.

In sum, our reading of MCL 460.6(1) and PSC Rule 102(*l*) compels us to overrule the portion of *Great Wolf Lodge* that states that Rule 411(11) applies to municipally owned utilities. In these cases, because the municipal electric utilities have not otherwise elected to operate in compliance with the rule, MCL 460.10y(3), Rule 411(11) is inapplicable; it does not apply where municipal electric utilities are concerned.

## B. MCL 124.3

Because we agree with the Court of Appeals that Rule 411 is inapplicable when the competing utility is a municipally owned utility that is not subject to PSC jurisdiction, we now turn to whether MCL 124.3 applies to prevent the property owner from switching electricity providers. MCL 124.3 states, in relevant part:

> (2) A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing.

> (3) As used in this section:

> (a) "Electric delivery service" has the same meaning as "delivery service" under section 10y of 1939 PA 3, MCL 460.10y.

This rule is sometimes referred to as the no-switch rule.

Although MCL 124.3 is directed *at* municipal corporations, the prohibition against switching service also protects municipal corporations from this same behavior:

> Except with the written consent of the municipally owned utility, a person shall not provide delivery service or customer account service to a retail customer that was receiving that service from a municipally owned utility as of June 5, 2000, or is receiving the service from a municipally owned utility. *For purposes of this subsection*, "customer" means the building or facilities served rather than the individual, association, partnership, corporation, governmental body, or any other entity taking service. [MCL 460.10y(2) (emphasis added).]

Because Consumers has not consented to plaintiffs' provision of electric service in either case, we must consider whether MCL 124.3(2) prevents either plaintiff from rendering service to the two parcels at issue. In order to determine whether the no-switch rule applies, we must first consider the meaning of two phrases in the statute, neither of which is defined by statute: "customers" and "already receiving."

13

The Court of Appeals relied on the definition of customer that is found in MCL 460.10y(2). This is inappropriate. First, the definition of customer in MCL 460.10y(2) is explicitly confined to that subsection because the definition is preceded by the limiting phrase "[f]or purposes of this subsection." MCL 460.10y(2). See *People v Mazur*, 497 Mich 302, 314-315; 872 NW2d 201 (2015). Second, MCL 124.3(3)(a) explicitly directs the reader to MCL 460.10y for a definition of "electric delivery service." Had the Legislature intended to do the same for the word "customer," it could have done so in a similar fashion, but it did not.

Because MCL 124.3 does not define the word customer, and because we cannot rely on the definition found in MCL 460.10y(2), we instead turn to a dictionary for a plain-language definition of the word. A "customer" is "one that purchases a commodity or service." *Merriam-Webster's Collegiate Dictionary* (11th ed).[7] As used in MCL 124.3(2), "customer" therefore refers to the entity that receives electric service and not the building or facilities on the land.

The phrase "already receiving" is in the present tense; more specifically, "receiving" is a present participle modified by the adverb "already." "Already" is defined as "prior to a specified or implied past, present, or future time[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). To "receive" is "to come into possession of[.]" *Id.*[8] The verb tense is meaningful here because it indicates a present-tense lens is

---

[7] *Black's Law Dictionary* (10th ed) similarly defines "customer" as "[a] buyer or purchaser of goods or services; esp., the frequent or occasional patron of a business establishment."

[8] *Black's Law Dictionary* (10th ed) defines "receive" as "[t]o take (something offered,

14

used in determining whether a switch is permissible. Although Rule 411(11) uses the verb "serving," this is modified by the phrase "the first utility," which suggests a focus on some point in the past. In MCL 124.3(2), the present participle "receiving" is modified by "already." Although "already" can suggest a prior point in time, when read together, the phrase "already receiving" refers to an action that started in the past and continues into the present. This can be contrasted against the past-tense verb "received," as here we are concerned both with whether service was received in the past and whether service has continued.

When MCL 124.3(2) is applied here, it becomes apparent that the no-switch rule does not prevent either plaintiff from providing electric service to the parcels at issue. In the case of Coldwater, the CBPU stands in the position of both property owner and municipal electric utility. Although a prior property owner received service from Consumers, CBPU has never contracted with Consumers. Indeed, Consumers ceased to provide electric service to the property in question before CBPU's acquisition of it. Therefore, CBPU was never a customer of Consumers and is not already receiving service from Consumers; it never received service from Consumers.

The case of Holland presents a closer question. In that case, the entity that requested service from HBPW was Benjamin's Hope; in contrast, it was CL Construction that received service from Consumers. As CL Construction is a different entity from Benjamin's Hope, Benjamin's Hope was never a customer of Consumers.[9] Additionally,

_____

given, sent, etc.); to come into possession of or get from some outside source[.]"

[9] There is some suggestion that, while it was CL Construction that contracted for electric service with Consumers, Consumers was directed to seek payment from Benjamin's

15

when Benjamin's Hope purchased the parcel, there was no electric service being provided on the land because electric service had been discontinued in 2008. Therefore, Benjamin's Hope was not "already receiving" service from Consumers; it had never received service in the first place.

To the extent it is argued that the provision of service to CL Construction should count under the statute, Consumers removed its electric facilities before April 24, 2012, and HBPW did not begin providing service until April 30, 2012. Admittedly, this break in service only spanned a few days, but the existence of a break still indicates that Benjamin's Hope was not "already receiving" service; at most, Benjamin's Hope would have merely *received* service, which is insufficient for the purpose of MCL 124.3(2). If the Legislature had intended that MCL 124.3(2) should still apply even when there have been breaks in service, it could have said so explicitly by using the past tense "received" rather than "receiving." That is not the case here.

Although it is argued that a plain-language reading of the statute would lead to significant amounts of gamesmanship, there are certainly many practical incentives for a customer to decide not to shut off service merely to switch utility providers. One can imagine many scenarios in which a property owner would not be able to weather such a break in electric service, no matter how temporary. Moreover, MCL 460.10y(2) is worded similarly, stating that a person may not provide service to a customer that "is receiving the service from a municipally owned utility." Accordingly, both public

Hope. If Benjamin's Hope had paid for electric service, this might support an argument that Benjamin's Hope was a customer of Consumers. However, there is no record evidence that this was the case.

16

utilities and municipally owned utilities are bound by similar statutory restrictions against switching.

## IV. CONCLUSION

We hold that Rule 411(11) does not apply to municipally owned utilities. We also hold that the word "customer" in MCL 124.3(2) is defined as an entity that receives electric service and that the use of the phrase "already receiving" means that service needs to continue into the present in order for the no-switch rule to apply. Because these consolidated cases involve municipally owned utilities, Rule 411 is inapplicable. Moreover, MCL 124.3(2) did not prevent either property owner from switching electric providers because Consumers had discontinued service before the provision of service by a municipally owned utility. Accordingly, we affirm the judgment of the Court of Appeals.

Richard H. Bernstein
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Joan L. Larsen
Kurtis T. Wilder

17